[Cite as *Kemba Fin. Credit Union v. Jackson on High Condominium Assn.*, 2022-Ohio-3247.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kemba Financial Credit Union, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 21AP-408 |
| | | (C.P.C. No. 20CV-5340) |
| The Jackson on High Condominium Association et al., | : | |
| | : | (REGULAR CALENDAR) |
| Defendants-Appellees, | : | |
| [Columbus Living, LLC, | : | |
| Defendant-Appellant]. | : | |

D E C I S I O N

Rendered on September 15, 2022

**On brief:** *Cole Kirby & Associates*, and *William S. Cole*, for appellee Springhills of Gallipolis, LLC.

**On brief:** *Doucet Gerling Co., L.P.A.*, and *Andrew J. Gerling*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

**{¶ 1}** Defendant-appellant, Columbus Living, LLC ("Columbus Living"), appeals from the July 15, 2021 decision and order entered by the Franklin County Court of Common Pleas denying its motion for summary judgment, granting the motion for reconsideration

filed by plaintiff-appellee, Kemba Financial Credit Union ("Kemba"),[1] and granting in part and denying in part Kemba's motion for summary judgment. For the following reasons, we reverse.

{¶ 2} This litigation involves a lien priority dispute regarding property located at 1147 North High Street, Columbus, Ohio ("the property"). The pertinent facts are undisputed. On December 20, 2017, the property owners, Short North Fitness, LLC, Rebecca Evans, and Bradley A. Howe (collectively "Short North Fitness"), executed a $240,000 promissory note payable to Kemba. The note was secured by an open-end mortgage and assignment of rents and leases on the property (together "mortgage"). Kemba recorded its mortgage on December 21, 2017.

{¶ 3} On May 8, 2018, Short North Fitness executed a $150,000 promissory note payable to Columbus Living, Albert McAloon, Wenjing Zhang, and Xin Gao (collectively Columbus Living). The note was secured by a mortgage on the same property. That mortgage was recorded on May 10, 2018. Columbus Living was aware of Kemba's mortgage prior to recording its own mortgage.

{¶ 4} On July 18, 2019, The Jackson on High Condominium Association ("Jackson on High") filed a complaint for foreclosure on the property in Franklin C.P. No. 19CV-5850. ("FCCP case No. 19CV-5850").[2] Kemba and Columbus Living, among others, were named as defendants; both filed answers.

{¶ 5} On July 20, 2020, Kemba executed a "Release, Satisfaction and Discharge" ("release") of its mortgage. The release provided that "for valuable consideration, the receipt of which is hereby acknowledged, [Kemba] does hereby certify that a certain Open-end Mortgage and Assignment of Leases and Rents, in the original amount of $240,000.00 executed by Short North Fitness LLC, filed for record on December 21, 2017 * * * has been fully satisfied." The release was signed by Don Guilbert, Kemba's "Director of CS,"[3] and acknowledged by a notary public.

---

[1] On October 4, 2021, Springhills of Gallipolis, LLC, filed in this court a notice of substitution as successor-in-interest to Kemba. However, because the trial court record exclusively references "Kemba," we likewise do so in this decision.

[2] In 2018, Jackson on High filed a certificate of lien against the property.

[3] The release does not define the abbreviation "CS."

{¶ 6}   On July 28, 2020, the trial court issued a judgment entry and decree of foreclosure in FCCP case No. 19CV-5850. The court found that Kemba held the first mortgage on the property and ordered the balance of the funds from the sale of the property to be held by the clerk of courts pending a further order.[4]

{¶ 7}   On August 12, 2020, Kemba recorded the release of its mortgage. The next day, August 13, 2020, Kemba filed a complaint for declaratory judgment against Short North Fitness, Columbus Living, and 12 additional defendants.[5] Kemba alleged that the release had been executed in error and that the debt underlying its mortgage had not been paid in full. Kemba further alleged that it remained the holder of the note and that Short North Fitness had defaulted on the note. Kemba sought a declaration that: (1) the release was void and ineffective to terminate its mortgage; (2) its mortgage be judicially reinstated; and (3) an equitable lien or constructive trust be imposed with lien priority under the theory of equitable subrogation.

{¶ 8}   On September 25, 2020, Kemba filed a combined motion for default judgment and motion for summary judgment. Kemba argued that it had "inadvertent[ly]" released its mortgage, and, as such, it was entitled to reinstatement of its first-priority lien as against each of the named defendants. (Sept. 25, 2020 Combined Mot. for Default Jgmt. and Mot. for Summ. Jgmt. at 2.) Kemba noted that no intervening liens were recorded in the one-day period between the mistaken release of its mortgage and its filing of the lawsuit to reinstate it; thus, a judicial order voiding the release and reinstating its mortgage would essentially place Kemba and all defendants in the same position as before the release was recorded. Kemba alternatively argued that it was entitled to the imposition of an equitable lien or constructive trust with lien priority via equitable subrogation. Kemba supported its motion with copies of the note, mortgage, and release, along with an affidavit from Andrew O'Connor, the Senior Vice President for Cooperative Business Services, LLC, Kemba's loan

---

[4] The trial court vacated the decree of foreclosure in an order dated January 12, 2021.

[5] Kemba's complaint names the following additional defendants: Jackson on High; McAloon; Zhang; Gao; Avenue Strategic, dba TLOA of OH, LLC ("Avenue Strategic"); Columbus Income Tax Division; Franklin County Treasurer; Ohio Department of Taxation ("Ohio DOT"); The Huntington National Bank ("Huntington"); TLOA of OH, LLC ("TLOA"); Springhills of Gallipolis, LLC ("Springhills"); and Adair Asset Management ("Adair"). Kemba alleged that the named defendants may have an interest in the property pursuant to various judgment liens, certificates of lien, and mortgages. In September 2020, Columbus Living, Ohio DOT, Jackson on High, and Adair filed answers to Kemba's complaint.

servicer. O'Connor attested that no consideration was paid to Kemba for execution of the release, that the release was executed and recorded in error, and that Kemba did not intend to release its security interest in the property.

{¶ 9} On October 8, 2020, Columbus Living filed a memorandum contra, arguing that Kemba's release of its mortgage extinguished its first-priority lien; thus, Columbus Living was now entitled to first-priority lien status pursuant to the May 10, 2018 recordation of its mortgage. Kemba filed a reply in support of its motion, to which Columbus Living filed a surreply.[6]

{¶ 10} On January 25, 2021, the trial court issued a decision and order finding that Kemba was not entitled to reinstatement of its previous first-priority lien status. The court reasoned that under R.C. 5301.23, Kemba originally had first priority when it recorded its mortgage on December 20, 2017; however, that placement was lost pursuant to R.C. 5301.28 when it released the mortgage on July 20, 2020. At that point, Columbus Living moved to first-priority lien status pursuant to its mortgage recorded on May 10, 2018. In so ruling, the court found "particularly persuasive" the Sixth District Court of Appeals' decision in *Croghan Colonial Bank v. Olena Food Farm, Inc.*, 6th Dist. No. H-13-006, 2013-Ohio-4520. The trial court further declined Kemba's request that its first-priority lien position be reinstated under the theory of equitable subrogation. Accordingly, the trial court denied Kemba's motion for summary judgment as to defendants Columbus Living, Ohio DOT, Huntington, Jackson on High, and Adair. The trial court concluded that Kemba "is not entitled to judgment as a matter of law on declaratory judgment because issues of material fact remain on lien reinstatement and equitable subrogation." (Jan. 25, 2021 Decision & Order at 13.)

{¶ 11} In the same decision and order, the trial court granted Kemba's motion for default judgment against non-answering defendants Short North Fitness, McAloon, Zhang, Gao, Columbus Income Tax Division, Franklin County Treasurer, TLOA, and Springhills. In addition, the court determined that because service had not been perfected on Avenue

---

[6] No other defendant responded to Kemba's combined motion for default judgment and motion for summary judgment.

Strategic, neither summary judgment nor default judgment was appropriate; accordingly, the court denied both motions as to Avenue Strategic.[7]

{¶ 12} On May 19, 2021, Columbus Living filed a motion for summary judgment, urging adherence to the court's previous conclusion that Kemba was not entitled to reinstatement of its first-priority lien status. On May 26, 2021, Kemba filed a combined memorandum in opposition to Columbus Living's motion for summary judgment and a motion for reconsideration of the trial court's January 25, 2021 decision and order. Kemba argued that the trial court misapplied *Croghan* and that a proper interpretation of *Croghan* actually supported its position that its mortgage should be reinstated as against Columbus Living and the other lienholders. On June 9, 2021, Columbus Living filed a response to Kemba's combined memorandum contra and motion for reconsideration.

{¶ 13} On July 15, 2021, the trial court filed a decision and order concluding, after "another careful reading of *Croghan Colonial Bank*," that Kemba was entitled to declaratory judgment that (a) the release was void and ineffective to terminate Kemba's interest in the property via its mortgage, and (b) Kemba's mortgage on the property was reinstated effective as of the original filing date. (July 15, 2021 Decision & Order at 10.) As such, the court determined that Kemba was entitled to summary judgment regarding reinstatement of its first-lien priority position as applied to defendants Columbus Living, Ohio DOT, Huntington, Jackson on High, Adair, and Avenue Strategic. Given this result, the court granted Kemba's motion for reconsideration and denied Columbus Living's motion for summary judgment. The court adhered to its previous analyses regarding the inapplicability of equitable subrogation and the granting of Kemba's motion for default judgment against non-answering defendants Short North Fitness, McAloon, Zhang, Gao, Columbus Income Tax Division, Franklin County Treasurer, TLOA, and Springhills.

{¶ 14} In a timely appeal, Columbus Living assigns one error for review:

> The trial court erred when it reinstated Plaintiff-Appellee's first priority lien status in contravention of Ohio's recording statutes.

{¶ 15} Columbus Living's assignment of error arises from the trial court's July 15, 2021 decision which both granted reconsideration of its previous denial of Kemba's motion

---

[7] Avenue Strategic filed its answer on January 28, 2021.

for summary judgment and denied Columbus Living's motion for summary judgment on Kemba's declaratory judgment complaint.

{¶ 16} A declaratory judgment action is a civil action and provides a remedy in addition to other legal and equitable remedies available. *Aust v. Ohio State Dental Bd.,* 136 Ohio App.3d 677, 681 (10th Dist.2000). "The essential elements for declaratory relief are: (1) a real controversy exists between the parties; (2) the controversy is justiciable in character; and (3) speedy relief is necessary to preserve the rights of the parties." *Id.*, citing *Ohio Assn. of Life Underwriters, Inc. v. Duryee*, 95 Ohio App.3d 532, 534 (10th Dist.1994). R.C. 2721.02(A) provides, in part, "courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed. * * * The declaration may be either affirmative or negative in form and effect. The declaration has the effect of a final judgment or decree."

{¶ 17} Appellate review of summary judgment is de novo. *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). " 'When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.' " *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516, ¶ 11 (10th Dist.), quoting *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997). Civ.R. 56(C) provides that a trial court must grant summary judgment when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, ¶ 6.

{¶ 18} Further, "[a]n appellate court reviewing a trial court's decision on a motion for reconsideration of a grant or denial of summary judgment applies a de novo standard of review." *Crown Chrysler Jeep, Inc. v. Boulware*, 10th Dist. No. 15AP-162, 2015-Ohio-5084, ¶ 28, citing *Hogrefe v. Mercy St. Vincent Med. Ctr.,* 6th Dist. No. L-13-1265, 2014-Ohio-2687, ¶ 38 (further citations omitted). " 'Thus, we "afford no deference to the trial court's decision and independently review the record in the light most favorable to the non-movant to determine whether summary judgment is appropriate." ' " *Id.*, quoting *Hogrefe*, quoting *Dunn v. N. Star Resources, Inc.*, 8th Dist. No. 79455, 2002-Ohio-4570, ¶ 10.

{¶ 19} Columbus Living asserts that the trial court erred in reinstating Kemba's first-priority lien status after Kemba released its mortgage. Specifically, Columbus Living maintains that reinstatement contravenes Ohio's recording statutes governing priority of recorded mortgages and the release of recorded mortgages. We agree.

{¶ 20} R.C. 5301.23 establishes the general rule that the first mortgage recorded shall have priority over any subsequently recorded mortgage. R.C. 5301.23(A) ("The first mortgage presented shall be the first recorded, and the first mortgage recorded shall have preference."). R.C. 5301.28 addresses the release of a recorded mortgage, providing in part: "[w]hen the mortgagee of property * * * receives payment of any part of the money due the holder of the mortgage, and secured by the mortgage, and enters satisfaction or a receipt for the payment, either on the mortgage or its record, that satisfaction or receipt, when entered on the record * * * by the county recorder, will release the mortgage to the extent of the receipt."

{¶ 21} It is undisputed that Kemba was first to record its mortgage; thus, under R.C. 5301.23, Kemba's mortgage had preference over Columbus Living's subsequently recorded mortgage. It is further undisputed that after Columbus Living recorded its mortgage, Kemba executed and recorded a release of its mortgage pursuant to R.C. 5301.28. Columbus Living argues that the recordation of a release of a mortgage pursuant to R.C. 5301.28 releases the mortgage by operation of law. According to Columbus Living, the natural consequence of releasing a mortgage is that junior lienholders move up in priority pursuant to R.C. 5301.23. Columbus Living maintains that "a court's equitable authority is limited by the express language of the statute. This flows from the well-established maxim that equity must follow the law." (Columbus Living's Brief at 12.) Kemba does not argue that its execution or recording of the release were defective in any way; rather, Kemba simply contends that because it mistakenly released the mortgage, the release should be disregarded and its first-priority lien status be reinstated.

{¶ 22} In support of its position, Columbus Living cites two common pleas court decisions—*GMAC Mtge. LLC v. Kiner*, Franklin C.P. No. 11 CVE-0-3799, 2012 Ohio Misc. LEXIS 1315 (Feb. 28, 2012), and *Spring Valley Bank v. Ah&A Properties, LLC*, Hamilton C.P. No. A1102762, 2012 Ohio Misc. LEXIS 182 (Aug. 23, 2012). In *Kiner,* the Kiners signed an open-end home equity credit agreement in favor of Telhio Credit Union ("Telhio") on

May 17, 2004, secured by a mortgage on real property. Telhio obtained a property report confirming there were no other mortgages or liens on the property. Accordingly, Telhio expected it had the first lien priority. Telhio recorded its mortgage on June 2, 2004.

{¶ 23} Two years later, the Kiners took out a loan with MERS, the predecessor to GMAC Mortgage LLC, ("GMAC") secured by a mortgage on the same property. MERS recorded the mortgage on September 27, 2006. On November 16, 2006, Telhio released its mortgage. However, the equity line was never closed and the Kiners did not authorize its termination. In November 2006, the Kiners resumed drawing money on the equity line. The draws continued for several months before Telhio realized it had mistakenly released its mortgage. Telhio attributed its mistake to an internal account number assignment error. Telhio then refiled its mortgage on December 30, 2010.

{¶ 24} The Kiners defaulted on both loans. GMAC filed a foreclosure action, asserting that it had the first lien on the property but naming Telhio as having a potential interest. The issue of lien priority was before the court on cross-motions for summary judgment. GMAC argued that its lien had priority over Telhio's interests because GMAC's lien was filed in September 2006 before Telhio re-recorded its lien in December 2010. Telhio argued it had priority over GMAC because it recorded its lien first in June 2004 and the borrowers never closed out the equity line; when it re-recorded the lien in December 2010, it revived the priority from its inception.

{¶ 25} The common pleas court agreed with GMAC:

> [T]he Court finds that as of November 16, 2006, when Telhio filed its Satisfaction of Mortgage, GMAC held the first and best lien. Assuming that the December 30, 2010 re-recording of the Telhio equity line was facially valid, it is second to GMAC's interest. The Court's decision rests on R.C. 5301.23. The Court finds no authority that permits the re-filing of a previously released mortgage. Moreover, even if it could be re-filed the revival of the previous priority is not supported by Ohio's priority statute. Telhio's argument regarding mistake is inapposite. * * * [T]he evidence in this case is anything but conclusive that filing the Satisfaction was a mistake.
>
> * * *
>
> [T]he Court finds that the general statutory rule of first in time applies. Telhio was first. GMAC was second. When Telhio vacated its record of mortgage, GMAC ascended to the priority post. The re-filing of the open-end mortgage could at best

notice any potential third mortgagor of Telhio's interest protected in its re-filed mortgage.

*Id*. at *8-9.

{¶ 26} In *Spring Valley,* the plaintiff obtained a mortgage on the property at issue in October 2006 and properly recorded the mortgage in November 2006. The defendant obtained a mortgage on the property and properly recorded that mortgage in August 2007. In October 2009, the plaintiff obtained the deed to the property in lieu of foreclosure. After the transfer of the deed, the plaintiff recorded a release of the mortgage.

{¶ 27} The plaintiff claimed that it mistakenly released its mortgage and would not have done so had it known of the defendant's mortgage. The plaintiff filed for foreclosure, and sought relief from its mistake and reinstatement of its mortgage and reinstatement of its first priority in order to foreclose on the property. The defendant argued that the plaintiff could not be relieved from the mistake that amounted to negligence on the plaintiff's part.

{¶ 28} The court determined that the plaintiff was not entitled to relief from its mistaken release of its mortgage. The court found distinguishable the cases upon which the plaintiff relied, stating:

> In this case, the Plaintiff has not committed the types of mistakes from which courts have provided relief. These mistakes dealt with clerical errors or circumstances out of the control of the mortgagee, such as a returned check. Plaintiff's circumstances were not outside its control. Plaintiff could have searched the records on the property and obtained knowledge of Defendant's mortgage, and did not. The Plaintiff's predicament is a result of its lack of due care. Plaintiff cannot be relieved from mistake to regain its senior priority.

*Id*. at *4.

{¶ 29} Employing *Kiner* and *Spring Valley*, Columbus Living argues that "[u]nder the plain language of Ohio's Recording Statute, Kemba lost its lien priority when it recorded the Release. There was no defect with the Release. It contained all requirements of law. * * * The only explanation Kemba offered was the 'Release was executed and recorded in error.' * * * Kemba did not claim the recorder or a third party erroneously released the lien. Kemba did not present any evidence suggesting anything beyond its own negligence when it Released its mortgage. * * * The law does not support reinstating Kemba's negligently

released lien in contravention of the recording statutes and to the detriment of other creditors." (Columbus Living's Brief at 14-15.)

{¶ 30} For its part, Kemba relies primarily on *Croghan*, 6th Dist. No. H-13-006, 2013-Ohio-4520, the case the trial court analyzed and applied (with conflicting results) in both its original decision denying Kemba's motion for summary judgment and its subsequent decision granting Kemba's motion for reconsideration and denying Columbus Living's motion for summary judgment.

{¶ 31} In *Croghan,* the Cassidys, on September 22, 2005, executed a cognovit note payable to the Croghan National Bank ("the bank"). The note was secured by a mortgage on certain property; the bank recorded its mortgage on October 5, 2005. On April 13, 2009, the bank released the mortgage. On July 1, 2009, the Misseys executed a promissory note payable to the Cassidys, secured by a mortgage on the same property. The Cassidys recorded the mortgage on July 2, 2009. After the Cassidys' mortgage lien was recorded, the bank recorded an affidavit with the intent to reinstate its mortgage lien.

{¶ 32} On August 25, 2009, the bank filed a complaint for judgment on the cognovit note and foreclosure of the mortgage. In their answer and cross-claim, the Cassidys alleged that the Misseys were in default on the note and declared the note immediately due and payable. The Cassidys sought a judgment in their favor on the note and foreclosure of their mortgage, as well as a declaration that their mortgage was a valid first and best lien against the property because the bank's mortgage had been released on April 13, 2009 and was never re-recorded. The Cassidys asserted that there was no special provision under Ohio law for reinstatement of an improperly released mortgage by affidavit; thus, argued the Cassidys, their mortgage took precedence.

{¶ 33} The trial court ultimately approved and confirmed the sale of the property. The court deposited the balance of the sale proceeds with the clerk of courts for distribution to one of the parties upon resolution of the lien-priority issue. Following cross-motions for summary judgment, the trial court found that the bank's release of its mortgage was the result of its own negligence and while the bank was entitled to reinstatement of its mortgage, it could not do so at the expense of an intervening lienholder. Thus, determined the trial court, since the Cassidys' note and mortgage were filed before the bank reinstated its mortgage, the Cassidys' lien had first priority.

{¶ 34} On appeal, the bank argued that the reinstatement of its lien revived the lien, and its priority related back to the date the mortgage lien was originally recorded.  The bank further argued that the Cassidys were not intervening lienholders, as they had testified during their deposition that they neither relied on the public record nor changed their position as a result of the public record and learned of the bank's lien only after the bank filed the foreclosure action.

{¶ 35} The Cassidys argued that the recording of their mortgage secured their lien as of the date of recording and, therefore, it ranked higher in priority than the bank's lien as a matter of law under R.C. 5301.23.  The appellate court agreed with the Cassidys and affirmed the trial court.

{¶ 36} The court noted that in cases where a first-priority lien was erroneously released by a recorder or third-party, courts generally apply equitable principles to reinstate the priority of the first lien recorded.  *Id.* at ¶ 12, citing *Farmers S. & L. Co. v. Kline*, 92 Ohio App. 406, 409 (7th Dist.1951) (court set aside the recorder's mistakenly recorded cancellation of mortgage where the defendant would  not be damaged); *Commercial Bldg. & Loan Co. v. Foley*, 25 Ohio App. 402, 405 (4th Dist.1927) (the great weight of authority supported the right of the first lienholder to have its lien reinstated after the recorder erroneously released it, even though a subsequent bona fide purchaser had no notice or knowledge of the erroneously released first lien).  The court further noted that the same analysis has been applied in cases involving mistaken releases by the lender where no intervening interest was obtained.  *Id.* at ¶ 14, citing *First Natl. Bank of Pennsylvania v. Pollock Inn Restoration Assn.*, 7th Dist. No. 96 CA 98, 1999 Ohio App. LEXIS 2956 (June 22, 1999) (equitable reinstatement of first mortgage permitted after the lender mistakenly filed a satisfaction of mortgage because the second mortgage specifically acknowledged the priority of the first mortgage and there was no harm caused by reinstatement).

{¶ 37} The court recognized, however, that where there has been an intervening interest recorded, courts have ordered equitable reinstatement of the first lien and its priority only when the intervening lienholder had actual or constructive notice of the first lien and either did not detrimentally rely upon the erroneous release or were not prejudiced by revival of the first lien.  *Croghan* at ¶ 15, citing *Fifth Third Mtge. Co. v. Fillmore*, 5th

Dist. No. 12 CAE 04 0030, 2013-Ohio-312, ¶ 53 (generally "equity follows the law," but if the rights of the parties are not clearly delineated, application of "broad equitable principles of fairness" is appropriate); and *Interstate Adviser, LLC v. McCalla,* Conn.Super. No. HHDCV106014396S, 2012 Conn.Super. LEXIS 2693 (Nov. 1, 2012) (a "court should not in equity permit a lienor, who has not been prejudiced thereby, to acquire priority when that was not the intent of the parties").

{¶ 38} Based on the foregoing, the court concluded that "[w]hile the Cassidys did not rely upon a clear record when they filed their mortgage lien, they certainly relied upon the recording system to assure that their lien would have priority as of July 9, 2009." *Croghan,* 6th Dist. No. H-13-006, 2013-Ohio-4520, at ¶ 24. Further, while the Cassidys did not know about the bank's lien, there was evidence that the bank had knowledge of the relevant recordings and liens. *Id.* The court also stated that the "issue of equity requires us to focus on the [b]ank's position and not the knowledge or actions of the Cassidys." *Id.*

{¶ 39} In the present case, in its original decision and order filed January 25, 2021, the trial court, relying on *Croghan,* stated:

> After considering the law and equities of the case, while the Court is sympathetic to Kemba's mistake, the law compels this Court to deny Kemba's summary judgment request to reinstate its lien to its previous first priority position. * * * *Croghan* states equitable principles can apply to restore first-priority lien status when erroneously released by a "recorder or third party." *Croghan* at ¶ 13. Here, neither a recorder nor a third party erroneously released the mortgage, but instead, Kemba did. Like the bank in *Croghan,* Kemba mistakenly released its mortgage lien on July 20, 2020, and attempted to correct that mistake by filing this lawsuit soon thereafter, which was August 13, 2020. Also like the Cassidys in *Croghan,* once Kemba released this lien, the other lienholders with interests in the Real Estate here such as Columbus Living, moved ahead of Kemba as to lien priority.
>
> Additionally, much like the Cassidys, the numerous lienholders with interests in the Real Estate, such as Columbus Living, likely relied on the normal functioning of the property recording system under R.C. [5301.23] and R.C. 5301.28. As detailed *supra,* the Real Estate is encumbered by a substantial number of liens, from judgments to mortgages. Kemba's request would require this Court to rule that Kemba's interest, despite its own negligence, should trump all these

other lienholders. The Court does not find that fair to Columbus Living or the other lienholders that answered the complaint.

Indeed, as *Croghan* provides, an equitable reinstatement of priority is only proper when 1) the intervening lienholder had actual or constructive notice of the first lien and 2) either did not detrimentally rely upon the erroneous release or was not "prejudiced by revival of the first lien." *Croghan* at ¶ 15. In this case, Columbus Living either knew, or should have known, Kemba's lien was initially higher in priority before the mistaken release, thereby permitting Kemba to fulfil the first prong. Even so, Kemba cannot satisfy the second prong because Columbus Living would be "prejudiced by revival" of Kemba's lien. As this Court mentioned *supra,* foreclosure proceedings were underway regarding the Real Property since 2019 in 19CV5850, which makes lien priority paramount for each party to enforce their various interests. Kemba, as a defendant, answered in 19CV5850 on July 21, 2019, so it should have been aware of the importance of protecting its own mortgage interest. It is unclear what led Kemba to mistakenly release its lien, but the Court declines to set dangerous precedent that would permit a party to recover from its own negligence when it harms other innocent parties.

This conclusion is further supported by *First Nat'l Bank* [*v. Adams*, 10th Dist. No. 2003-Ohio-6651], which only permits equitable reinstatement when there is no harm caused by doing so. Kemba argues that "mistakes are correctable," but unfortunately, in contrast to *First Nat'l Bank,* in this case, they are not because Columbus Living and other lienholders—Ohio DOT, Huntington, Jackson on High, and Adair—would be harmed. *See First Nat'l Bank*, 1999 Ohio App. LEXIS 2956, * 7.

(Jan. 25, 2021 Decision & Order at 10-12.)

{¶ 40} However, in its July 15, 2021 decision and order granting Kemba's motion for reconsideration, the trial court concluded that *Croghan* supports Kemba's reinstatement claim:

First, Kemba is correct that Columbus Living is not an "intervening lienholder" as envisioned by *Croghan Colonial Bank*. As Kemba aptly argues, an intervening lienholder is one whose interest would be perfected <u>after</u> an inadvertent release. This situation occurred in *Croghan Colonial Bank,* but did not happen here. *In Croghan Colonial Bank,* the

Cassidys recorded their mortgage <u>after</u> the bank inadvertently released a mortgage. In the case at bar, Columbus Living did not record their mortgage after Kemba released their mortgage, but instead recorded it <u>before</u>. In contrast to this Court's prior interpretation, "intervening lienholder" does not mean the mere movement of [a] lienholder's priority interest that operates by default through the recording statutes, R.C. § 5301.23 and R.C. § 5301.28. Instead, to become an intervening lienholder under *Croghan Colonial Bank,* Columbus Living would have had to record their mortgage between August 12, 2020 and August 13, 2020, which is the very short period of time from when Kemba mistakenly release the Open-End Mortgage and then filed this lawsuit to reinstate it. This is not what occurred in this case, however; Columbus Living recorded their mortgage years before on May 10, 2018. Thus, Columbus Living is not an intervening lienholder.

Second, Kemba is also correct that Columbus Living did not detrimentally rely upon the erroneous release and was not prejudiced by revival of the first lien as envisioned by *Croghan Colonial Bank*. Because the Court has already ruled that Columbus Living is not an intervening lienholder, and accordingly there is no intervening interest recorded, the Court need not analyze the second aspect, but it will do so to clarify the record. In *Croghan Colonial Bank*, the Cassidys would have been prejudiced by the revival of the bank's mortgage because they relied on the property records as accurate when they recorded their own lien. Columbus Living did not face that situation here. Instead, Columbus Living was a passive party who would have received a higher priority windfall in foreclosure proceedings by benefiting from Kemba's inadvertent mistake. Columbus Living was not entitled to the windfall in the first place because it is not an intervening lienholder, and therefore there is no prejudice to Columbus Living in reviving Kemba's Open-End Mortgage. The Court's prior analysis interpreted "prejudice" too broadly; the narrower confines of *Croghan Colonial Bank's* definition is warranted instead. While the inadvertent release has certainly caused confusion and litigation for Columbus Living, it is not prejudiced.

(Emphasis sic.) (July 15, 2021 Decision & Order at 10-11.)

{¶ 41} We note that the cases upon which the parties principally rely—*Kiner, Spring Valley,* and *Croghan*—are not binding on this court.[8] However, we find persuasive the legal analysis set forth in *Kiner, Spring Valley* and the trial court's January 25, 2021 decision interpreting *Croghan* and apply it in adopting Columbus Living's contention that a court's equitable authority is limited by the express language of the recording statutes.

{¶ 42} "The function of equitable relief is to supplement the law where the law is insufficient to remedy a wrong." *In re Barone*, 11th Dist. No. 2004-G-2575, 2005-Ohio-4479, ¶ 17. A court of equity is authorized to render an award "on the principle that it may exercise its equitable jurisdiction to the extent of administering full relief which the case demands." *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 276 (1984). A court does not, however, have unfettered discretion to award equitable relief. *Barone* at ¶ 18. Various long-standing maxims, such as "equity follows the law," limit a court's application of equity. "When the rights of parties are clearly defined and established by law (especially when the source of such definition is through constitutional or statutory provision) the maxim 'equity follows the law' is usually strictly applied." *Civ. Serv. Personnel Assn., Inc. v. Akron*, 48 Ohio St.2d 25, 27 (1976) Thus, "while it may be tempting to decide [a] case on subjective principles of equity and fundamental fairness, [a] court has a greater obligation to follow the law." *State ex rel. Schwaben v. School Emps. Retirement Sys.*, 76 Ohio St.3d 280, 285 (1996).

{¶ 43} As Kemba argues, equitable principles can apply to restore first-priority lien status upon the erroneous recording of a release by entities other than the mortgagee or in circumstances beyond the control of the mortgagee. Kemba does not argue that another entity erroneously released its mortgage or that circumstances beyond its control resulted in the release of its mortgage. Indeed, the record establishes that Kemba provided a written, signed, notarized, and recorded release of its mortgage. It took deliberate, intentional and formal action to release its first-lien position. Kemba simply states that it released the mortgage by mistake, without further explanation. While we recognize the equitable principles involved in this case, we cannot use these concepts to override the clear statutory language of R.C. 5301.23 and 5301.28. Further, Columbus Living and other

---

[8] There is no subsequent appellate history for either *Kiner* or *Spring Valley,* and no other appellate court has adopted or cited *Croghan*.

lienholders would be harmed by the reinstatement of Kemba's first lien priority position. Finally, as Columbus Living points out, the release did not extinguish Short North Fitness's underlying debt. Rather, the release served only to alter Kemba's status from a secured creditor to an ordinary creditor, and Kemba remains free to pursue all other remedies available to it against Short North Fitness.

{¶ 44} For the foregoing reasons, we find that the trial court erred when it granted Kemba's motion for reconsideration and denied Columbus Living's motion for summary judgment. Kemba was not entitled to judgment as a matter of law on its declaratory judgment complaint; rather, Columbus Living was entitled to judgment as a matter of law. Therefore, Columbus Living's assignment of error is sustained.

{¶ 45} Accordingly, the July 15, 2021 judgment of the Franklin County Court of Common Pleas is hereby reversed, and the matter is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed; cause remanded.*

DORRIAN and McGRATH, JJ., concur.

———————————