[Cite as *Columbus v. SSA, Ltd.*, 2015-Ohio-3995.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CITY OF COLUMBUS | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| SSA, LTD., ET AL. | : | Case No. 14 CAE 12 0085 |
| | : | |
| Defendants-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:               Appeal Court of Common Pleas,
                                       Case No. 10 CVH 09 1349

JUDGMENT:                              Affirmed/Reversed in Part &
                                       Remanded

DATE OF JUDGMENT:                      September 28, 2015

APPEARANCES:

For Plaintiff-Appellee                 For Defendants-Appellants

WESTLEY M. PHILLIPS                    KEVIN E. HUMPHREYS
ANDREW D.M. MILLER                     332 West 6th Avenue
77 North Front Street                  Columbus, OH  43201
Columbus, OH  43215

*Farmer, J.*

{¶1}   On September 14, 2010, appellee, city of Columbus, filed a complaint against appellant, SSA, Ltd., and Slane Trucking and Excavation and Phil Slane, claiming trespass, negligence, nuisance, conversion, a violation of R.C. 901.51, and ejectment.   Said claims alleged the defendants trespassed upon and damaged city property (cut down trees) while performing site development work on appellant's property.  Appellee's property abuts the western shore of the O'Shaughnessy Reservoir and is used for environmental purposes and is located to the east of appellant's property; therefore, appellee's property is located between appellant's property and the reservoir.

{¶2}   On October 12, 2010, the Slane defendants filed an answer and cross-claim against appellant for indemnification.

{¶3}   On November 1, 2010, appellant filed an answer and counterclaim against appellee, claiming breach of covenant/contract, trespass, and nuisance.  Said claims alleged appellee failed to maintain a drainage ditch across its property thereby flooding appellant's property; therefore, any work appellant had the Slane defendants perform was necessary to restore and/or open the drainage ditch.

{¶4}   A bench trial was held on August 13-15, September 30, 2013, and February 21, 2014.  Before the final day of trial, appellee and the defendants Slane reached a settlement and they were dismissed from the case.   By judgment entry filed March 21, 2014, the trial court found in favor of appellee as against appellant on its claims of trespass and a violation of R.C. 901.51, and awarded appellee $14,369 in compensatory damages, trebled to $43,109 upon a finding that appellant acted

recklessly. The trial court also dismissed the claims in appellant's counterclaim for lack of evidence.

{¶5} On April 4, 2014, appellant filed a motion for prejudgment interest. A hearing was held on June 23, 2014. By judgment entry filed December 2, 2014, the trial court granted the motion and awarded appellee prejudgment interest on the $14,369 amount. Also on December 2, 2014, the trial court issued a nunc pro tunc judgment entry changing the amount of the treble damages award from $43,109 to $43,107.

{¶6} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶7} "THE TRIAL COURT ERRED IN AWARDING JUDGMENT AGAINST SSA, LTD., AND SLANE AFTER THE CITY HAD SETTLED WITH SLANE AND DISMISSED ITS CLAIMS AGAINST SLANE WITH PREJUDICE PRIOR TO THE CONCLUSION OF THE TRIAL."

II

{¶8} "THE TRIAL COURT ERRED IN IMPOSING LIABILITY UPON SSA, LTD., NOTHWITHSTANDING THE EXISTENCE OF PRIVILEGES FOR SSA TO PERFORM WORK TO REMEDY DRAINAGE ISSUES AT THE SITE."

III

{¶9} "THE TRIAL COURT ERRED IN IMPOSING LIABILITY UPON SLANE AND SSA, LTD., PURSUANT TO R.C. §901.51."

IV

{¶10} "THE TRIAL COURT ERRED IN IMPOSING PREJUDGMENT INTEREST UPON SSA, LTD."

V

{¶11} "THE TRIAL COURT ERRED IN AWARDING COMPENSATORY DAMAGES AGAINST SSA, LTD., FOR THE SUM OF $14,369."

I

{¶12} Appellant claims the dismissal of the defendants Slane with prejudice precluded any judgment against it as its vicarious liability under the master/servant/principal/agent doctrine was extinguished with the settlement. We disagree.

{¶13} First and foremost, it is evident from the trial court's December 2, 2014 nunc pro tunc judgment entry that the trial court found appellant and the defendants Slane to be jointly and severally liable: "Defendants SSA, Ltd., Phil Slane and Slane Trucking and Excavation are jointly and severally liable to Plaintiff, City of Columbus for the damages awarded above." An appeal was not filed on this issue.

{¶14} Secondly, the trial court specifically found appellant was one of the parties primarily liable in the trespass as well as vicariously liable:

The Court finds that SSA, Ltd., while acting through its contractor, Slane Trucking and Excavating and Phil Slane, trespassed upon the City's property. SSA, Ltd. controlled and directed Slane Trucking and Excavating. Defendant SSA, Ltd. unlawfully entered on to the City's

property and unlawfully cut and removed trees. Some of the City of Columbus' trees were taken from the Plaintiff's property. Some of the Plaintiff's cut trees were left on the City's property. Also some cut trees taken from SSA, Ltd.'s property were left in piles on the City's property.

From the facts of this case, it is obvious that SSA, Ltd. not only trespassed on the Plaintiff's property, but did so with a "heedless indifference" to obvious property lines which its surveyor, Bird and Bull, had previously identified. The Court therefore finds the Defendant SSA, Ltd. trespassed upon the City's property and did so "recklessly". The real issue now becomes, what is the proper measure of damages for Defendant's reckless trespass.

{¶15} R.C. 2307.24(B) states the following:

Sections 2307.22 [Determination of Joint and Several Tort Liability] and 2307.23 [Requirements when determining percentage of tortious conduct attributable to party] of the Revised Code do not affect any other section of the Revised Code or the common law of this state to the extent that the other section or common law makes a principal, master, or other person vicariously liable for the tortious conduct of an agent, servant, or other person. For purposes of section 2307.22 of the Revised Code, a principal and agent, a master and servant, or other persons having a vicarious liability relationship shall constitute a single party when

determining percentages of tortious conduct in a tort action in which vicarious liability is asserted.

{¶16} R.C. 2307.25(A) states the following:

Except as otherwise provided in sections 2307.25 to 2307.28 of the Revised Code, if one or more persons are jointly and severally liable in tort for the same injury or loss to person or property or for the same wrongful death, there may be a right of contribution even though judgment has not been recovered against all or any of them. The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's proportionate share of the common liability, and that tortfeasor's total recovery is limited to the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share. No tortfeasor may be compelled to make contribution beyond that tortfeasor's own proportionate share of the common liability. There is no right of contribution in favor of any tortfeasor against whom an intentional tort claim has been alleged and established.

{¶17} Pursuant to R.C. 2307.24 and 2307.25, there exists a right of contribution when joint and several liability has been found. Therefore, we conclude there exists a right of contribution exercisable through R.C. 2307.26 for the tort of trespass and a right of set-off for the amount paid by the defendants Slane against the judgment sub judice (Assignment of Error V).

{¶18}  Assignment of Error I is denied.

II

{¶19}  Appellant claims the trial court disregarded the defense of privilege as it had a drainage easement right and the privilege to abate a private nuisance of flooding. We disagree.

{¶20}  Ron Stone, a partner in SSA, Inc., never suggested the clearing of the trees was for ditch cleaning purposes, but in fact freely admitted it was predevelopment clearing to prepare the land for potential commercial use.  T. at 68.

{¶21}  In its appellate brief at 19-20, appellant argues it had the right to secure drainage of its property:

**Natural Drainage Rights in Rural Land (the civil-law rule).**

Given the rural character of the property at issue in this case, SSA has natural drainage rights in the Columbus property as a matter of law.  It is well established that:

With respect to rural areas, Ohio has adopted the civil-law rule, i.e., that the dominant estate has a natural easement or servitude in the lower or subservient estate for drainage of water flowing in its natural course. *Butler v. Peck*, 16 Ohio St. 334, 343, 88 Am. Dec., 452; *Tootle v. Clifton,* 22 Ohio St. 247, 10 Am. Rep., 732; *Blue v. Wentz,* 54 Ohio St., 43 N. E., 493; *Mason v. Commrs. of Fulton Co.,* 80 Ohio St., 151, 88 N. E., 401, 131 Am. St. Rep., 689, 24 L. R. A. (N. S.), 903.

*Lunsford v. Stewart,* 95 Ohio App. 383 (1953).  Accordingly, natural drainage law affords SSA, as the higher land owner, with the right to maintain the natural flow of the stream flowing from the pond to the river so that SSA's property would not flood from obstructions.***These legal drainage rights operate in the form of a legal easement or servitude and run in favor of SSA as a matter of law.

{¶22}  Appellant argues because it had a right to drainage via an easement, it therefore had the right to maintain the discharge of water through appellee's property, and the clearing of the trees was to abate a private nuisance caused by appellee's lack of maintenance.

{¶23}  Central to these defenses is whether there is in fact a ditch running east from the southeastern bank of the pond on appellant's property, across appellee's property, to the O'Shaughnessy Reservoir.

{¶24}  Appellant argues the ditch in question is the ditch referenced in a 1923 deed which conveyed the subject property from George F. Thomas, et al., to appellee. Plaintiff's Exhibit 9.  That deed contains the following provision:

The grantee herein, agrees to keep open a certain ditch across a tract of ground heretofore purchased by said City of Columbus from Estelle K. Healy, et al., abutting on the south of the premises herein conveyed, in order that the drainage from a ditch now open across the

east portion of the farm from which the property herein conveyed was taken, and owned by the grantors herein, will not be obstructed.

{¶25} Appellee's employee, Land Steward Steve Lowe, testified to this issue using aerial photographs of the property from 1940 and 1951 (Plaintiff's Exhibit 6). Based upon his knowledge, experience, and examination of the photographs, he opined the ditch referenced in the 1923 deed is not the ditch running out of appellant's pond. T. at 329. The 1940 aerial photograph did not depict a pond. T. at 329. The pond is present in the 1951 aerial photograph. T. at 330-331. All the water diversion as argued by appellant is after the Thomas and Healy deeds and the construction of State Route 42. *Id.* The ditch appellant argues it was clearing and maintaining and correcting a nuisance is past the conveyance of the Thomas deed. T. at 332-333.

{¶26} Appellant also argues a common law right to secure drainage of its property. It is true that a primary landowner is not responsible for damages from a runoff (damnum absque injuria), but it does not vest appellant with the right to the wholesale clearing of trees and brush as appellant's actions entailed.

{¶27} Upon review, we find the trial court did not err in rejecting appellant's argument to an easement or abatement of a nuisance.

{¶28} Assignment of Error II is denied.

III

{¶29} Appellant claims the trial court erred in imposing treble damages pursuant to R.C. 901.51 as it was not reckless, did not actually perform the work, and the work performed was privileged. We disagree.

{¶30}  R.C. 901.51 states: "No person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land."  The statute further states: "In addition to the penalty provided in section 901.99 of the Revised Code, whoever violates this section is liable in treble damages for the injury caused."

{¶31}  It is undisputed by the evidence that a trespass occurred.  T. at 31, 69. Mr. Stone admitted the clearing of the trees was done for predevelopment purposes.  T. at 68.  He also claimed the trespass and the clearing of the trees was done to maintain a ditch that drained from State Route 42 to the pond on appellant's property.  T. at 73. He freely admitted he understood a trespass would occur.  T. at 80-82.  At no time did appellant or Mr. Slane seek or receive permission to do any work on appellee's property.  T. at 46-47, 81.

{¶32}  When Mr. Slane was confronted by Mr. Hall and told to stop doing any work on city property, Mr. Slane called Mr. Stone who stated the clearing was to build a Kroger store.  T. at 211, 311.  There was no mention of a ditch obstruction.  T. at 212, 311.  There had never been any complaints about flooding because of ditch obstructions.  T. at 311, 313-314.  Plaintiff's Exhibit 10F is a photograph depicting a pump set by Mr. Slane, as directed by Mr. Stone, pumping water out of the pond onto appellee's property.  T. at 45-46, 81, 115-116.

{¶33} The testimony of appellee's employees, Water Protection Specialists George Cybulski and Loren Hall, and the photographs of appellee's property immediately after appellant's trespass established the designated property line and the extent of the harvesting and the dumping of stumps, logs, and vegetative debris on

appellee's property.　T. at 105-108, 112-115, 119-137, 204-206, 214-224; Plaintiff's Exhibits 10A-Y and 11A-G.　The property line was completely disregarded by appellant and the defendants Slane.

{¶34}　We find the evidence conclusively supports the involvement of appellant and its primary role as the director of the clearing.　The evidence does not support appellant's argument that Mr. Slane acted alone and not in concert with appellant.

{¶35}　The primary defense presented by appellant is that its actions were privileged.　We addressed this issue in Assignment of Error II and found the defense to be without merit.

{¶36}　Upon review, we find the trial court did not err in awarding treble damages.

{¶37}　Assignment of Error III is denied.

IV

{¶38}　Appellant claims the trial court erred in awarding prejudgment interest as it did nothing to delay the process and did not refuse to accept a reasonable offer of settlement.　We agree.

{¶39}　An appellate court's review of a trial court's award of prejudgment interest is governed by an abuse of discretion standard.　*Landis v. Grange Mutual Insurance Co.,* 82 Ohio St.3d 339, 1998-Ohio-387.　In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.　*Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶40} In *Miller v. Miller & Miller Accountants,* 5th Dist. Richland No. 2002-CA-0068, 2003-Ohio-5913, ¶ 39, this court, in reviewing the issue of prejudgment interest, quoted the following in part from *Kalain v. Smith,* 25 Ohio St.3d 157, 159 (1986):

"A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."

{¶41} During the prejudgment interest hearing held on June 23, 2014, appellee argued it was entitled to prejudgment interest because it had made three offers to settle, two pre-lawsuit offers for $61,000 and an offer to settle during trial for $96,000. June 23, 2014 T. at 3-4. The $96,000 amount was the halfway mark between the two experts' opinions.

{¶42} The trial court awarded appellee $14,369 which it trebled pursuant to R.C. 901.51 to $43,107. *See,* Nunc Pro Tunc Judgment Entry filed December 2, 2014.

{¶43} Appellant consistently argued it was not responsible for the trespass of the independent contractor, Mr. Slane, and therefore not liable for the damages to appellee's property. Before the final day of trial, appellee settled with the Slane defendants for $3,000. Appellee argued $54,100 in restoration damages and the trial

court awarded appellee $14,369. *See,* Judgment Entry Nunc Pro Tunc filed December 2, 2014. We agree with appellee that appellant's privilege claim was futile and not supported by the evidence (Assignment of Error II).

{¶44} In its December 2, 2014 judgment entry on prejudgment interest, the trial court found an unrealistic approach to settlement by appellant and the defendants Slane. The trial court awarded prejudgment interest from September 30, 2007, some three years prior to the filing of the lawsuit and only forty-five days subsequent to the actual trespass and cutting of the trees.

{¶45} Given the disparity of the damages award vis-á-vis the settlement offers and the lack of any showing of delay or dilatory action by appellant, we find the award for prejudgment interest to be error.

{¶46} Assignment of Error IV is granted.

V

{¶47} Appellant claims the award of compensatory damages was against the manifest weight of the evidence. Appellant claims the trial court's reliance on the testimony and report of David Ahlum is not supported by the evidence, is disproportionate to the underlying value of the property, and appellant is entitled to a $3,000 set-off for appellee's settlement with the defendants Slane. We agree in part.

{¶48} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction

must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21.

{¶49} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶50} As we found in Assignment of Error I, the trial court made a finding of joint and several liability. Therefore, appellant is entitled to a set-off of $3,000 against the damages assessed by the trial court.

{¶51} Appellee presented the testimony of two experts, David Ahlum, an arborist with over forty years of experience, and Thomas Davis Sydnor, a retired professor emeritus from the School of Environmental Natural Resources at OSU and an urban forester. T. at 543, 546, 601. Mr. Ahlum submitted a report on "Value of Damaged Trees at O'Shaughnessy Reservoir south of Route 42 west of Route 257" and Mr. Sydnor submitted a report on "Identifying and Defining Environmental Benefits of Trees Removed during Trespass." Plaintiff's Exhibits 26 and 27. The trial court also had before it a tree damage assessment prepared by Elayna Grody who served as appellee's Natural Resources Manager for the Recreation and Parks Department. Plaintiff's Exhibit 25. Mr. Ahlum estimated $44,438.12 in restoration costs, Mr. Sydnor

estimated $51,600 in environmental benefits lost, and Ms. Grody estimated $148,060 in damaged trees.

{¶52}  In awarding appellee $14,369 in compensatory damages, the trial court specifically found Mr. Ahlum's report, Plaintiff's Exhibit 26, to be credible, but rejected damages for three years of maintenance after planting (a windfall to appellee).  The trial court also rejected an amount for the loss of environmental benefits of the trees destroyed (speculative and not proven).  *See,* Judgment Entry Nun Pro Tunc filed December 2, 2014.

{¶53}  Mr. Ahlum testified regarding his report and the issue of damages.  T. at 551-552.  Mr. Ahlum was hired by appellee and did an on-site evaluation of 1.25 acres. T. at 549-550.  Despite being told to determine the value of the trees from the debris left (stumps and vegetation), it was necessary to determine where the debris had actually been harvested because some of the debris had not come from appellee's property.  T. at 550.  As a result, he came up with a representation of what was on the land prior to the harvesting.  T. at 552-553, 557.  From this analysis, he averaged the number of trees and then quoted prices as to what it would cost to return the site to its prior condition.  T. at 558, 560-562.  His report indicates replacement cost at $44,438.12. However, the trial court modified the "restoration cost" method employed by Mr. Ahlum by disallowing the amount for three years of maintenance after planting.  The trial court justified this on the nature, use, and the functionality of the land.  As the trial court noted, the land was not a neatly landscaped park or recreation area, but was basically an unmaintained, unmowed, unattended riverbank property.

{¶54} To refute the trial court's analysis of the evidence, appellant argues Defendant's Exhibit O to demonstrate that only 156 trees were harvested as opposed to Mr. Ahlum's estimate of 580 trees needed to replace the damaged trees. The exhibit was called "Demonstrative Exhibit" and was not admitted into evidence, but was testified to by Mr. Stone as he had put the exhibit together. T. at 830-831. Mr. Stone testified from his prior nursery business experience and his personal knowledge of the site and the harvesting done by appellant. T. at 831-833, 846-847. From the exhibit, he opined the trees removed had no value and none were sold. T. at 841-842, 844, 847. Mr. Stone took exception with Mr. Ahlum's determination that appellant disturbed appellee's property in certain areas. T. at 857. Mr. Stone also challenged the type of trees said to have been in the disturbed area. T. at 861-863. The trial court in fact accepted Mr. Stone's testimony as to the nature and value of street trees versus forest trees in finding the trees were " 'volunteer' trees to grow and die as nature and weather allowed" and "Cottonwoods and Box Elders are not trees raised for timber. Moreover, many of species are considered as 'nuisance' trees by some." T. at 866, 871-872, 880-881; Nunc Pro Tunc Judgment Entry filed December 2, 2014. The trial court noted in its judgment entry the trees within the 1.25 acres "were native trees and shrubs primarily valued for their buffering of the reservoir, erosion control, and wildlife habitat" and were "native trees of little or no market value – Cottonwood, Ash, and Hackberry."

{¶55} As the trier of fact, once the trial court determined that 1.25 acres of appellee's land was improperly harvested, it remained within the trial court's province to determine an amount and value of the disturbed forestry. We find the record supports the trial court's approach and its modified acceptance of Plaintiff's Exhibit 26.

{¶56} Appellant further argues the disproportionate award of damages of $14,369 vis-á-vis the value of the 1.25 acres. There is no definitive value per se in the record of the 1.25 acres. However, there is sufficient testimony of the value of the forestry to the land for the protection of the riverbank. Per Ms. Grody's assessment, appellee argued the value of the trees damaged to be $148,060. Plaintiff's Exhibit 25. We find the trial court's detailed analysis of determining damages as set forth in the December 2, 2014 nunc pro tunc judgment entry is sufficient to counter any disproportionate argument.

{¶57} Assignment of Error V is granted in part. The amount of damages is set-off by the $3,000 settlement with the defendants Slane.

By Farmer, J.

Hoffman, P.J. and

Delaney, J. concur.

SGF/sg 827