[Cite as *Austin v. Mid-Ohio Pipeline Servs., L.L.C.*, 2023-Ohio-1958.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CHARLES E. AUSTIN, | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| MID-OHIO PIPELINE SERVICES, LLC, | : | Case No. 2022 CA 0021 |
| ET AL., | : | 2022 CA 0041 |
| | : | 2022 CA 0060 |
| Defendant - Appellants | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Richland County
Court of Common Pleas, Case No.
18 CV 0915

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      June 13, 2023

APPEARANCES:

For Plaintiff-Appellee

JAMES E. ARNOLD
DAMION M. CLIFFORD
GERHARDT A. GOSNELL II
TIFFANY CARWILE
Arnold & Clifford LLC
115 W. Main Street, Fourth Floor
Columbus, Ohio 43215

For Defendant-Appellants

PHILIP F. DOWNEY
Vorys, Sater, Seymour and Pease LLP
50 S. Main Street, Suite 1200
Akron, Ohio 44308

JOHN M. KUHL
EMILY J. TAFT
Vorys, Sater, Seymour and Pease LLP
52 E. Gay Street
Columbus, Ohio 43215

*Baldwin, J.*

**{¶1}** Appellants Mid-Ohio Pipeline Services LLC and Mid-Ohio Pipeline Company, Inc. ("Mid-Ohio") appeal the decisions of the trial court granting partial summary judgment to the appellee regarding the parties' contract dispute, denying appellants' motion for reconsideration, determining damages, excluding evidence at trial, denying appellants' motions for directed verdict, instructing to the jury, and awarding the appellee pre-judgment interest. Appellee is Charles E. Austin.

### STATEMENT OF THE FACTS AND THE CASE

**{¶2}** The appellee was an executive at appellants Mid-Ohio from 2002 through December 31, 2015, first as Vice-President and then as President. The appellants experienced significant growth during the appellee's tenure at Mid-Ohio. Sometime in or around 2008 the appellants' then owner, Brent Yates, and the appellee established an understanding that the appellee would be treated as a 20% owner upon the sale of the companies. This arrangement was not a secret, as Mid-Ohio's CFO, Rob Walters, was also aware of this understanding between the parties.

**{¶3}** The parties subsequently entered into a Separation Agreement and General Release of Claims that, inter alia, memorialized their agreement regarding the appellee's 20% interest in the proceeds if the companies were sold. Paragraph 5 of the Separation Agreement, entitled "Phantom Ownership Plan," provided a vehicle through which to effectuate that agreement, and stated that the parties "shall" agree to terms and conditions of a phantom ownership plan addressing transmittal of the appellee's 20% ownership interest in the event of a sale. Paragraph 5 also provided that the appellee's non-vested phantom ownership would equal twenty percent of the appellant companies;

that the appellee's phantom ownership would vest upon the occurrence of a "trigger event"; defined a "trigger event" to be "just prior to the closing date if the Companies would experience a "change in control"; that a "change in control" was defined as the date when any person acquired more the 50% of the total fair market value of total voting power of the equities or assets of the companies; and, that during the period of appellee's phantom ownership, appellee would receive 20% of any "non-tax distributions" paid by either of the companies.  The "phantom ownership plan" would address tax issues and otherwise help in effectuating the transfer to appellee of his 20% interest upon the occurrence of a trigger event.

{¶4}　The appellee executed the Separation Agreement on December 18, 2015. The Separation Agreement provided at paragraph 7 that the appellee was to execute a General Release of Claims on or after the date of separation in consideration for, inter alia, the benefits set forth in Paragraph 5. The Separation Agreement identified December 31, 2015 as the date of separation. The appellee executed the General Release on December 31, 2015 in compliance with the terms of the Separation Agreement. As such, the appellee performed as per the terms set forth in the Separation Agreement.

{¶5}　Brent Yates, on behalf of the appellants, executed both the Separation Agreement and the General Release of Claims on February 17, 2016. The phantom ownership agreement never came to fruition.

{¶6}　Preparation of the phantom ownership agreement was in the appellants' exclusive control, and the companies' chief financial officer was the person to whom preparation of the phantom ownership agreement was delegated. He was to prepare the draft and provide it to the appellee for review. The undisputed evidence establishes,

however, that the appellants' CFO did not produce the phantom ownership agreement to the appellee for review until March 24, 2016, nearly three months <u>after</u> the January 31, 2016 deadline that had been established by the appellants. The phantom ownership agreement was never completed or executed.

**{¶7}** A "change in control" occurred when the Mid-Ohio companies were sold to a third-party, the closing of which took place on January 31, 2018. This sale and resultant "change in control" constituted a "trigger event" as defined by the Separation Agreement. The appellee's 20% interest vested upon the closing of the sale of the companies. However, the appellee was not treated as a 20% owner, and was not paid proceeds from the sale.

**{¶8}** On December 28, 2018, the appellee filed a complaint against the appellants seeking, inter alia, damages for breach of the Separation Agreement due to the appellants' failure to pay him the agreed upon 20% share of proceeds from the sale of the companies.

**{¶9}** The parties filed cross-motions for partial summary judgment on the issue of whether the parties had an enforceable contract regarding the appellee's 20% interest in Mid-Ohio. On October 28, 2020, the trial court granted the appellee's motion for partial summary judgment and denied the appellants' motion or partial summary judgment, finding that the Separation Agreement memorialized the appellants' promise to treat the appellee as a 20% owner of the companies if the companies sold within five years of the execution of the Separation Agreement.

**{¶10}** The trial court found that the appellee had complied with the terms of the Separation Agreement by virtue of his execution of the General Release, and that the

appellants had failed to do so by virtue of their failure to execute the agreements and provide the phantom ownership agreement by the January 31, 2016 deadline they had established. The trial court found further that because the 2018 sale of the companies occurred within five years of the 2015 agreement, the appellee was entitled to 20% of the sale proceeds.

{¶11} On November 9, 2020, the appellants filed a motion for reconsideration of the trial court's decision granting the appellee partial summary judgment, which was denied in the trial court's April 29, 2021 order on pending motions. The April 29, 2021 order also held that the damages in the case shall amount to twenty percent of the sale price of the companies at the time of the sale, and held further that a jury trial was necessary to determine said damages.

{¶12} The issue of damages proceeded to jury trial on January 20, 21, and 24, 2022, prior to which the trial court issued an order excluding as irrelevant evidence of what the parties "might" have intended to be the "proceeds," and evidence of the parties' "possible intent" in this regard. The jury heard evidence regarding the amount for which the Mid-Ohio companies sold from both the appellee's accounting expert Robert Evans, and appellants' accounting expert Ryan Link.

{¶13} The appellants moved for directed verdict at the close of the appellee's case, and again at the conclusion of its case, both of which the trial court overruled. The trial court thereafter heard arguments regarding jury instructions and interrogatories, during which the appellants submitted that the jury should be instructed to determine the amount of proceeds the appellee was "entitled to share in" as opposed to "the amount of the proceeds that the [appellants Mid-Ohio] were sold for." The trial court noted that it had

already determined in its judgment entry granting partial summary judgment to the appellee that the pertinent issue was the amount for which the businesses sold, from which the appellee's twenty percent interest would be calculated. As such, the trial court instructed the jury to determine the amount of proceeds from the sale of appellants Mid-Ohio.

**{¶14}** The jury, after hearing the testimony of the parties' lay and expert witnesses and considering all the evidence presented during trial, returned a verdict finding the proceeds from the sale of appellants Mid-Ohio to be $87,357,249.00, from which it determined the appellee's twenty percent vested interest to be $17,471,449.80. The trial court entered the judgment entry on the jury verdict on January 27, 2022.

**{¶15}** The appellee filed a motion for prejudgment interest, which was fully briefed by the parties. The matter of prejudgment interest was scheduled for an evidentiary hearing, for which the parties filed a stipulation of facts. The evidentiary hearing was conducted before the magistrate, who determined that the appellee's interest in the proceeds from the sale of appellants Mid-Ohio vested upon the finalization of the sale on January 31, 2018, and that he was entitled to payment on the same payment schedule as then company owner Brent Yates and his son Jordan Yates. The stipulations established the dates upon which the Yates received their respective payments and the amounts of said payments. Based upon the stipulations and the evidence presented, the magistrate recommended that the trial court award the appellee $2,843,846.43 in prejudgment interest through January 27, 2022, and that the trial court award the appellee post-judgment interest at the rate of $1,436.02 per day from January 28, 2022 until the judgment is fully paid.

**{¶16}** The appellants filed an objection to the imposition of prejudgment interest. The appellee filed an objection to the $1,436.02 per day post-judgment interest amount, arguing that he was entitled to post-judgment interest on the sale proceeds combined with pre-judgment interest, for a rate of $1,669.75 per day.

**{¶17}** The trial court issued an order on the objections to the magistrate's decision on August 15, 2022, in which it found that the appellee was entitled to pre-judgment interest from February 2, 2018, when the first payment was made to the Yates following the sale of appellants Mid-Ohio, until January 27, 2022, when the trial court adopted the jury's verdict, in the amount of $2,830,686.97. The trial court found further that the appellee was entitled to post-judgment interest, which began to accrue on January 28, 2022, on the total amount of $20,302,136.77 (the $17,471,449.80 jury verdict plus $2,830,686.97 in pre-judgment interest) until the judgment is paid in full.

**{¶18}** The appellants filed a number of timely appeals which have been consolidated, and set forth the following eight assignments of error:

**{¶19}** "I. THE TRIAL COURT ERRED BY NOT GRANTING SUMMARY JUDGMENT TO MID-OHIO ON COUNT I."

**{¶20}** "II. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO AUSTIN REGARDING LIABILITY ON COUNT I."

**{¶21}** "III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING MID-OHIO'S MOTION FOR RECONSIDERATION."

**{¶22}** "IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DECIDING DAMAGES ISSUES THAT ARE WITHIN THE PROVINCE OF THE JURY."

**{¶23}** "V. THE TRIAL COURT COMMITTED MULTIPLE REVERSIBLE ERROR – OR CUMULATIVE ERROR – BY EXCLUDING ADMISSIBLE AND RELEVANT EVIDENCE AT TRIAL."

**{¶24}** "VI. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT GRANTING MID-OHIO'S MOTIONS FOR DIRECTED VERDICT."

**{¶25}** "VII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GIVING IMPROPERLY AND INCONSISTENT INSTRUCTIONS AND INTERROGATORIES TO THE JURY."

**{¶26}** "VIII. THE TRIAL COURT ERRED IN AWARDING AUSTIN PRE-JUDGMENT INTEREST.

## ASSIGNMENTS OF ERROR NUMBERS I AND II

**{¶27}** The appellants argue in assignments of error numbers one and two that the trial court erred in granting partial summary judgment to the appellee and in denying appellants' motion for partial summary judgment. We disagree.

## STANDARD OF REVIEW

**{¶28}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, this Court reviews a trial court's award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

**{¶29}** Civ. R. 56(C) states in pertinent part: "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any,

timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ... A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Thus, summary judgment may be granted only after the trial court determines that: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

{¶30} As this Court recently stated in *Infield v. Westfield Ins. Co.*, 5th Dist. Muskingum No. CT2022-0055, 2023-Ohio-1199: "It is well established that the party seeking summary judgment bears the burden of demonstrating no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt*, 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial

burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 309 N.E.2d 924 (1974)." *Id.* at ¶ 21.

## ANALYSIS

**{¶31}** The appellants argue that the appellee's claim for breach of contract must fail because the phantom ownership agreement was never executed. We disagree.

**{¶32}** " 'The elements of a breach of contract claim are "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." ' *Becker v. Direct Energy, LP*, 2018-Ohio-4134, 112 N.E.3d 978, ¶ 38 (2d Dist.), quoting *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994). 'When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement.' *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11." *Hillier v. Fifth Third Bank,* 2020-Ohio-3679, 154 N.E.3d 1266, ¶24 (2nd Dist.)

**{¶33}** As set forth by this Court in *Wallick v Lent,* 5th Dist. Tuscarawas No. 2008 AP 05 0034, 2009-Ohio-1399:

> Generally, in order to establish a breach of contract, it must be shown by a preponderance of the evidence that (1) a contract existed, (2) one party fulfilled his obligations, (3) the other party failed to fulfill his obligations, and (4) damages resulted from that failure. *Spano Bros. Constr. Co., Inc. v. Adolph Johnson & Son Co.,* 9th Dist. No. 23405, 2007-Ohio-1427, 2007 WL 912229, ¶ 12, citing *Lawrence v. Lorain Cty. Community College* (1998), 127 Ohio App.3d 546, 548-549, 713 N.E.2d 478. In cases where the facts are undisputed, and the only question to be resolved is whether a breach of contract occurred, a question of law exists for the court to decide. *Farmers Market Drive-In Shopping Ctrs., Inc. v. Magana,* 10th Dist. No. 06AP-532, 2007-Ohio-2653, 2007 WL 1560276, ¶ 32.

*Id.* at ¶61.

**{¶34}** The parties in this case entered into two agreements: the Separation Agreement, and the General Release of Claims.

**{¶35}** The Separation Agreement set forth at Paragraph 5 the terms and conditions that were to be included in a "Phantom Ownership Plan," to which the parties were to agree on or before January 31, 2016. The Separation Agreement set forth further that one of the terms to be encompassed within the Phantom Ownership Plan was that the appellee would have a 20% non-vested ownership interest in Mid-Ohio, and was to contain specifically delineated provisions, including a provision providing that the appellee's ownership interest would vest upon the occurrence of a trigger event. A trigger

event was defined as just prior to the closing date if appellants Mid-Ohio experience a change in control, which in turn was defined as the date any one person or group acquired more than a fifty-percent ownership interest in the companies. Although the phantom ownership plan was not executed, the Separation Agreement was executed by the appellee and by the chairman and owner of appellants Mid-Ohio, and it clearly established, inter alia, that the appellee was to receive a twenty percent ownership interest in the proceeds of a sale of the company in exchange for his execution of the General Release of Claims attached to the Separation Agreement at Exhibit A.

{¶36} "A cause of action for breach of contract accrues when the breach occurs or when the complaining party suffers actual damages. *Thompson v. Ohio Dept. of Transp.* (Nov. 26, 1996), Franklin App. No. 96API04-497, citing *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 9." *Bell v. Ohio State Bd. of Trustees*, 10th Dist. Franklin No. 06AP-1174, 2007-Ohio-2790, ¶ 27.

{¶37} The court in *McKinney v. LaMalfa Party Ctr.*, 2022-Ohio-4333, ¶ 40, 203 N.E.3d 57, 64–65, *appeal not allowed*, 2023-Ohio-1149, ¶ 40, 169 Ohio St. 3d 1490, 206 N.E.3d 745, stated:

> " 'A material breach occurs when a party violates a term essential to the purpose of the agreement.' " *Troy Oaks Homes & Residential Club, Inc. v. Sokolowski*, 11th Dist., 2016-Ohio-8427, 78 N.E.3d 365, ¶ 28, quoting *Ohio Educ. Ass'n v. Lopez*, 10th Dist. Franklin No. 09AP-1165, 2010-Ohio-5079, 2010 WL 4102948, ¶ 12. " 'Mere nominal, trifling, or technical departures will not result in a breach of contract; slight departures, omissions, and

inadvertencies should be disregarded." *Id.*, quoting *Tucker v. Young*, 4th Dist. Highland No. 04CA10, 2006-Ohio-1126, 2006 WL 574309, ¶ 25. "Where there has been a material breach of contract by one party, the other party may treat the contract as terminated and rescind it or may sue for damages." *McDonagh v. Cortland Sav. & Banking Co.,* 11th Dist. Trumbull No. 2002-T-0138, 2004-Ohio-1146, 2004 WL 451014, ¶ 38.

*Id.* at ¶ 40.

**{¶38}** In this case, there is no genuine issue of material fact regarding the parties' intent that the appellee was to be treated as a 20 percent owner of the companies in the event of their sale. Further, there is no genuine issue of material fact regarding the preparation of the agreements by the appellants' CFO, Rob Walters, and his insertion of the January 31, 2016 deadline in the Separation Agreement as the date by which the phantom agreement was to be executed. Nor is there a genuine issue of material fact regarding the appellants' sole control of the preparation of the phantom ownership agreement. The purpose of the phantom ownership agreement was not to establish the appellee's twenty percent interest; rather, it was to provide a vehicle for the transfer of the appellee's vested ownership interest, an interest to which the appellants had already agreed.

**{¶39}** The appellants' failure to provide the appellee with the "phantom ownership plan" agreement on or before the January 31, 2016 deadline, which it had established, was a material breach of the Separation Agreement. Accordingly, partial summary judgment in favor of the appellee was proper, and the appellants' assignment of error numbers I and II are without merit and therefore overruled.

## ASSIGNMENT OF ERROR NUMBER III

**{¶40}** The appellants argue in assignment of error number three that the trial court committed reversible error by denying Mid-Ohio's motion for reconsideration. We disagree.

## STANDARD OF REVIEW

" 'An appellate court reviewing a trial court's decision on a motion for reconsideration of a grant or denial of summary judgment applies a de novo standard of review.' *Crown Chrysler Jeep, Inc. v. Boulware*, 10th Dist. No. 15AP-162, 2015-Ohio-5084, 2015 WL 8196082, ¶ 28, citing *Hogrefe v. Mercy St. Vincent Med. Ctr.,* 6th Dist. No. L-13-1265, 2014-Ohio-2687, 2014 WL 2854186, ¶ 38 (further citations omitted). ' "Thus, we 'afford no deference to the trial court's decision and independently review the record in the light most favorable to the nonmovant to determine whether summary judgment is appropriate.' " ' *Id.*, quoting *Hogrefe*, quoting *Dunn v. N. Star Resources, Inc.*, 8th Dist. No. 79455, 2002-Ohio-4570, 2002 WL 2027283, ¶ 10."

*Kemba Fin. Credit Union v. Jackson on High Condo. Ass'n*, 2022-Ohio-3247, 199 N.E.3d 19, ¶ 18 (10th Dist.). See, also, *Thrower v. Bolden*, 8th Dist. Cuyahoga No. 97831, 2012-Ohio-3956, ¶ 26."

**{¶41}** Based upon our analysis of the summary judgment issues above, we find that the trial court did not err when it denied the appellants' motion for reconsideration. Appellants' assignment of error number three is without merit, and is therefore overruled.

## ASSIGNMENT OF ERROR NUMBER IV

**{¶42}** The appellants argue in assignment of error number four that the trial court committed reversible error by determining that the appellee was entitled to twenty percent of the proceeds from the sale of Mid-Ohio because damages issues are within the province of the jury. Based upon or analysis above, we disagree.

**{¶43}** The terms of the Separation Agreement established that the parties had agreed that the appellee would be treated as a twenty percent owner upon the sale of Mid-Ohio. Once the 2018 sale of Mid-Ohio closed, the appellee's interest was vested and he was entitled to receive his twenty percent share of the proceeds. The trial court determined that the value of the proceeds from the sale of Mid-Ohio should be determined by a jury, and a jury thereafter made that determination. Appellants' assignment of error number four is without merit, and is therefore overruled.

## ASSIGNMENT OF ERROR NUMBER V

**{¶44}** The appellants argue in assignment of error number five that the trial court committed multiple reversible errors – or cumulative error – by excluding admissible and relevant evidence at trial. We disagree.

## STANDARD OF REVIEW

**{¶45}** "Any error in the admission of evidence must be analyzed under an abuse of discretion standard of review. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144." *State v. Evege*, 5th Dist. Ashland No. 99-COA-01287, 2000 WL 93640, *3 (Jan. 21, 1999). See, also, *State ex rel. DeWine v. 333 Joseph, L.L.C.*, 2014-Ohio-5090,

21 N.E.3d 1142, ¶ 24 (3rd Dist.) ("[p]resuming that the trial court is in a better position to evaluate the evidence and assess its credibility, we will not reverse the trial court's evidentiary ruling unless it was "contrary to law, unreasonable, not supported by the evidence, or grossly unsound").

**{¶46}** The appellants submit that the trial court abused its discretion when it excluded evidence regarding the Separation Agreement and references to the phantom ownership agreement contained therein. The trial court reasoned that because the issue regarding breach of the Separation Agreement had been determined through summary judgment, any such evidence was irrelevant, and would only serve to confuse the jury. The trial court's reasoning is not contrary to law, unreasonable, unsupported by the evidence, or grossly unsound, and therefore not an abuse of discretion.

**{¶47}** The appellants also argue that the trial court abused its discretion when it refused to allow the jury to see the appellee's complaint, and in particular the formula the appellee set forth in his complaint as a basis to determine damages. This, too, was not an abuse of discretion. The appellee's complaint was not an admission, nor was it evidence for the jury to consider, particularly since the trial court determined that the proper measure of the appellee's damages was twenty percent of the proceeds from the sale of Mid-Ohio. The trial court did not abuse its discretion in disallowing admission of the complaint into evidence.

**{¶48}** The appellants next argue that the trial court committed reversible error by excluding the draft phantom ownership plan agreement. However, the phantom ownership agreement was never executed and was therefore not binding on the parties. The trial court determined that the appellants' breach of contract occurred when it failed

to execute the Separation Agreement until after the January 31, 2016 deadline it had imposed for execution of the phantom ownership agreement, and failed to provide the draft of the phantom ownership agreement prior to the January 31, 2016 deadline. The trial court did not abuse its discretion when it excluded the phantom ownership agreement.

**{¶49}** The appellants argue further that the trial court erred in excluding the Lorenz Agreement, an agreement between Mid-Ohio and a different former employee that contained different terms and different language, and did not provide for an "ownership interest" in the companies. For these reasons, the trial court found that it was irrelevant, and would only serve to confuse the jury. The trial court did not abuse its discretion when it excluded the Lorenz Agreement.

**{¶50}** The appellants also argue that the trial court erred in excluding the calculations set forth in the Strike Deal. The "Strike Deal" was a proposed deal between Mid-Ohio and another company that never came to fruition, and was not relevant to the issue before the jury. Further, the Separation Agreement executed by the parties contained an integration clause at paragraph 14 providing that it replaced any prior agreements or promises. The trial court did not abuse its discretion when it ruled that the "Strike Deal" was irrelevant and therefore inadmissible.

**{¶51}** Next, the appellants argue that the trial court erred in prohibiting them from presenting evidence as to why the appellee was not discussed during its 2018 sale of the companies. However, the only issue before the jury was the amount of proceeds from the sale of the companies, from which the appellee's twenty percent would be then be calculated. We cannot say the trial court abused its discretion when it found that evidence

regarding the lack of discussion about the appellee with the entity that ultimately purchased the companies is relevant to this singular issue.

**{¶52}** Finally, the appellants argue that even if none of the aforementioned evidentiary errors alone warrant reversal, the cumulative error doctrine compels reversal. We disagree. As set forth by this Court in *Brahm v. DHSC, LLC*, 2019-Ohio-766, 132 N.E.3d 266:

> Pursuant to the cumulative error doctrine, which is usually presented in criminal cases, a conviction will be reversed where the cumulative effect of errors in a trial deprives the defendant of the constitutional right to a fair trial even though each individual error by itself does not constitute cause for reversal. *State v. Garner*, 74 Ohio St.3d 49, 656 N.E.2d 623 (1995). Ohio courts have found "the extension of the cumulative error doctrine to civil cases is warranted where the court is confronted with several errors, which either are harmless individually or have marginally prejudicial effects, but combine to require a new trial." *Edge v. Fairview Hospital*, 8th Dist. Cuyahoga No. 95215, 2011-Ohio-2148, 2011 WL 1744279.

*Id.* at ¶ 61.

**{¶53}** We do not find any error in the evidentiary determinations made by the trial court. Consequently, the cumulative error doctrine is inapplicable in this case, as there have not been multiple errors. Accordingly, appellants' assignment of error number five is without merit, and is therefore overruled.

## ASSIGNMENT OF ERROR NUMBER VI

{¶54} The appellants argue in assignment of error number six that the trial court committed reversible error by not granting their motions for directed verdict. We disagree.

## STANDARD OF REVIEW

{¶55} "The standard of review for the grant or denial of a motion for directed verdict is: whether there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant. *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114." *Stark Cty. Bd. of Commrs. v. Eslich Wrecking Co.*, 5th Dist. Stark No. 2001CA00344, 2002-Ohio-2562, ¶ 10.

{¶56} The appellants argue that the trial court erred when it denied their motions for directed verdict because the jury is not permitted to speculate on damages. The pertinent issue, however, is whether there is probative evidence regarding damages. In this case, the jury was presented with evidence regarding the sale of Mid-Ohio and distribution of the proceeds therefrom, including the testimony of two accounting experts, which enabled them to make conclusions regarding the amount of proceeds from the sale of the businesses. This evidence is to be construed most strongly in the appellee's favor, and as such it was not error for the trial court to allow the jury to consider it in order to determine the "proceeds" from which the appellee's twenty-percent interest was to be calculated. The appellants' assignment of error number six is without merit, and is therefore overruled.

## ASSIGNMENT OF ERROR NUMBER VII

{¶57} The appellants argue in assignment of error number seven that the trial court committed reversible error by giving improper and inconsistent jury instructions and interrogatories. We disagree.

### STANDARD OF REVIEW

The determination whether to give a jury instruction is a matter left to the sound discretion of the trial court. *Telle v. Pasley,* 5th Dist. Delaware No. 12CAE080048, 2013–Ohio–2407, at ¶ 42 (Citation omitted). A trial court is obligated to provide jury instructions which correctly and completely state the law. *Cromer v. Children's Hosp. Med. Ctr. of Akron,* 142 Ohio St.3d 257, 2015–Ohio–229, 29 N.E.3d 921, ¶ 22 (Citation omitted.) The jury instructions must also be warranted by the evidence presented in a case. *Estate of Hall v. Akron Gen. Med. Ctr.,* 125 Ohio St.3d 300, 2010–Ohio–1041, 927 N.E.2d 1112, ¶ 26. The question of whether a jury instruction is legally correct and factually warranted is subject to de novo review. *Id.* An inadequate instruction which misleads the jury constitutes reversible error. *Marshall v. Gibson,* 19 Ohio St.3d 10, 12, 482 N.E.2d 583 (1985).

Our standard of review when it is claimed improper jury instructions were given is to consider the jury charge as a whole and determine whether the charge misled the jury in a manner affecting the complaining party's substantial rights.

*Lowder v. Domingo,* 5th Dist. Stark No. 2016CA00043, 2017-Ohio-1241, ¶39-40.

**{¶58}** The appellants requested the trial court instruct the jury to determine "the amount of the proceeds that [Mid-Ohio] were sold for and which portion [appellee] is entitled to share in based on his 20 percent interest in the companies as determined by the Court." The trial court, however, had already determined in its judgment entry granting appellee partial summary judgment that the portion of sale proceeds to which the appellee was entitled was twenty percent. Accordingly, the only pertinent issue for the jury's determination was the amount of proceeds from the sale of the companies, from which that twenty percent could be calculated. This is precisely the instruction the trial court gave to the jury. It was not improper, nor was it inconsistent. In fact, it was fully consistent with the trial court's decision on partial summary judgment. The trial court did not err in instructing the jury. The appellants' assignment of error number seven is without merit, and is therefore overruled.

## ASSIGNMENT OF ERROR NUMBER VIII

**{¶59}** The appellants argue in assignment of error number eight that the trial court erred in awarding the appellee prejudgment interest. We disagree.

## STANDARD OF REVIEW

An appellate court's review of a trial court's award of prejudgment interest is governed by an abuse of discretion standard. *Landis v. Grange Mutual Insurance Co.,* 82 Ohio St.3d 339, 695 N.E.2d 1140 (1998). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

*Columbus v. SSA, Ltd.,* 2015-Ohio-3995, 42 N.E.3d 359, ¶ 39 (5th Dist.).

### ANALYSIS

**{¶60}** The award of prejudgment interest as to claims arising out of breach of contract is governed by R.C. 1343.03, which states:

(A) In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

(B) Except as provided in divisions (C) and (D) of this section and subject to section 2325.18 of the Revised Code, interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct or a contract or other transaction, including, but not limited to a civil action based on tortious conduct or a contract or other transaction that has been settled by agreement of the parties, shall be computed from the date the judgment, decree, or order is rendered to the date on which the money is paid and shall be at the rate determined

pursuant to section 5703.47 of the Revised Code that is in effect on the date the judgment, decree, or order is rendered. That rate shall remain in effect until the judgment, decree, or order is satisfied.

**{¶61}** The imposition of prejudgment interest in contract cases is based upon the premise that a party to a contract should not retain the use of money owed under a contract when that amount is due and payable to the other contracting party. See, *Miller v. Gunckle,* 96 Ohio St.3d 359, 775 N.E.2d 475, 2002–Ohio–4932, at ¶ 28; *Luft v. Perry Cty. Lumber & Supply Co.,* 10th Dist. No. 02AP–559, 2003–Ohio–2305, at ¶ 46.

**{¶62}** The appellants argue that because the phantom ownership plan was not executed money was not due and payable, and as such there was nothing upon which to calculate prejudgment interest. However, we have already determined that the trial court correctly found that the appellants breached the Separation Agreement, and correctly found that the appellee was entitled to twenty percent of the proceeds from the sale of Mid-Ohio. Accordingly, money was due and payable to the appellee, and prejudgment interest was properly assessed on that sum as it was determined by the jury.

**{¶63}** Further, while the Separation Agreement did not require payment by a specific date, it was well within the trial court's discretion to determine the date upon which the prejudgment interest began to accrue. In this case, the trial court determined that the date on which Brent Yates and Jordan Yates received payment from the proceeds of the sale was the date on which the appellee should have received payment of his twenty percent ownership interest, and as such prejudgment interest should accrue from that date. The trial court did not abuse its discretion in this regard. The appellants' assignment of error number eight is without merit, and is therefore overruled.

## CONCLUSION

{¶64} Based upon the foregoing, the appellants' assignments of error numbers one through eight are overruled, and the judgment of the Richland County Court of Common Pleas is hereby affirmed.

By: Baldwin, J.

Gwin, P.J. and

King, J. concur.