[Cite as *PNC Bank Natl. Assn. v. Whitaker*, 2025-Ohio-1078.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PNC BANK NATIONAL ASSOCIATION SUCCESSOR BY MERGER | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| | : | Hon. Michael D. Hess, J. |
| | : | Hon. Jason P. Smith, J. |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | Judges Hess and Smith |
| | : | Sitting by Assignment by the |
| | : | Supreme Court of Ohio |
| | : | |
| JEFF WHITAKER, ET AL. | : | Case No.  2024 CA 00021 |
| | : | |
| Defendants-Appellants | : | O P I N I O N |


CHARACTER OF PROCEEDINGS:      Appeal from the Fairfield County Court
of Common Pleas,
Case No. 2019 CV 00235


JUDGMENT:                                        Affirmed


DATE OF JUDGMENT ENTRY:           March 27, 2025


APPEARANCES:

For Plaintiff-Appellee                              For Defendant-Appellant

H. TOBY SCHISLER                              MARIAN D. DAVIDSON
Dinsmore & Shohl, LLP                          120 McKinley Street
225 East Fifth Street, Suite 1900            Lisbon, Ohio 44432
Cincinnati, Ohio 45202

*Hess, J.*

**{¶1}** Defendant-Appellant Jeff Whitaker appeals the trial court's order granting summary judgment in favor of plaintiff-appellee PNC Bank National Association (PNC Bank) on its foreclosure action and against Whitaker on his counterclaims.

## I. FACTS AND PROCEDURAL HISTORY

**{¶2}** Whitaker executed a promissory note on April 25, 2005 payable to PNC Bank's predecessor-in-interest, National City Mortgage, in the original principal amount of $103,600.00, plus interest. The note was secured by an open-end mortgage executed by Whitaker pledging real property located at 201 North Liberty Street, Baltimore, Ohio as collateral and recorded in Fairfield County, Ohio as Instrument Number 200500010511. National City Mortgage merged with PNC Bank and the note was endorsed in blank. Upon the merger, PNC Bank acquired the note and mortgage.

**{¶3}** On October 19, 2015, PNC Bank mailed Whitaker a notice of default and acceleration letter. PNC Bank initiated a foreclosure action against Whitaker in 2015. This prior foreclosure action was dismissed pursuant to a 2018 settlement agreement, which included a trial modification under which Whitaker was to make three monthly payments in a reduced amount. If Whitaker timely made the three payments, the parties would enter into a permanent modification. Whitaker made the timely payments and PNC Bank mailed Whitaker the permanent modification agreement. Whitaker never signed or returned the permanent modification agreement. As a result, PNC Bank sent Whitaker a letter in January 2019 advising him that the original terms of the note and mortgage applied, and any prior foreclosure activity would resume. In April 2019, PNC Bank filed this foreclosure action.

**{¶4}** The foreclosure action was stayed for over two years while the parties pursued mediation. During mediation, the parties attempted a second unsuccessful modification. The action was placed back on the active docket and PNC Bank filed a motion for summary judgment supported by the affidavit of William Hardrick, an officer of PNC Bank. Whitaker opposed the motion with his own affidavit and the affidavit of his attorney, Marian Davidson, who represented Whitaker in both the prior and the current foreclosure actions. PNC Bank filed a reply. Whitaker also filed a motion to strike the October 19, 2015 notice of default and acceleration letter ("default letter") that was attached as exhibit 4 to PNC Bank's summary judgment motion and authenticated by the Hardrick affidavit. PNC Bank opposed the motion to strike and Whitaker filed a reply.

**{¶5}** The trial court denied Whitaker's motion to strike the default letter and granted PNC Bank's motion for summary judgment on its foreclosure action and against Whitaker's counterclaims. Whitaker appealed.

## II. ASSIGNMENTS OF ERROR

**{¶6}** Whitaker identified two assignments of error for review:

I. The Trial Court erred and abused its discretion by denying Appellant's Motion to Strike Exhibit 4 of the Affidavit of William Hardrick (Appellee's alleged October 19, 2015 Notice of Default) despite Appellee's failure to properly authenticate said Exhibit, as well as to establish its applicability to the instant action due to the preexisting Dismissal of a previous foreclosure case that said Exhibit pertained exclusively to.

II. The Trial Court erred and abused its discretion by granting Appellee's Motion for Summary Judgment on its claims, as well as on Appellant's Counterclaims despite genuine issues of material fact relating thereto.

## III. LEGAL ANALYSIS

### A. Motion to Strike Default Letter

**{¶7}** "The decision whether to grant or deny a motion to strike is governed by the abuse of discretion standard of review." *Mackey v. Altercare of Hartville Ctr. for Rehab. & Nursing Care*, 2023-Ohio-1581, ¶ 41 (5th Dist.). "Abuse of discretion is more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Id.* at ¶ 21, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

**{¶8}** PNC Bank supported its motion for summary judgment with the October 19, 2015 default letter attached as exhibit 4 to Hardrick's affidavit. In his affidavit, Hardrick stated that he was a PNC Bank officer and that his statements were based on personal knowledge. He testified that PNC Bank maintained, as part of its regular business practices and record keeping system, a computer database of communications for the mortgage loans it services. These communications are made in the ordinary course of business and Hardrick testified that he had access to those business records and that his statements about them were made based on personal knowledge. Hardrick authenticated the note and the mortgage and testified that the note was in default for the payment due October 1, 2015. Hardrick testified that the October 19, 2015 default letter was mailed to Whitaker and that a true and accurate copy of the default letter was attached to his affidavit as exhibit 4.

**{¶9}** Whitaker challenged the authenticity of the default letter and argued that it was "a sham" because it referenced a "06-08-15" date in the extreme bottom right side of the letter that was more than four months prior to the October 19, 2015 date of the letter. Whitaker also argued that the letter was not a true and accurate copy of the original, but was labeled as an "internet reprint," that it reflected an inaccurate overdue amount, and that it did not specify the action required to cure the default. Whitaker also contended that

a prior default letter sent in May 2011 was found to be deficient by a court in a prior foreclosure proceeding.

{¶10} PNC Bank opposed the motion to strike, arguing that Whitaker's challenges went to the weight to be given to the default letter, not its admissibility, and were not appropriate grounds for a motion to strike. PNC Bank argued that Hardrick's affidavit complied with the requirements of Civ.R. 56(E) governing affidavits in support of summary judgment motions and that his affidavit fully established the appropriate evidentiary foundation for the default letter. PNC Bank then addressed Whitaker's main contention with the default letter – that the date "06-08-15" in the lower right-hand corner was not the same as the "October 19, 2015" date on letter. PNC Bank submitted a second affidavit from Hardrick in which he explained that the reference to "06-08-15" on the bottom right side reflected that the template used for the notice was most recently updated on June 8, 2015. PNC Bank also argued that the words "internet reprint" at the bottom was unrelated to the date and that a different, non-complaint default letter sent in May 2011 in a prior case had no relevance to this case.

{¶11} The trial court rejected Whitaker's argument that the "06-08-15 internet imprint date stamp on the extreme bottom right side . . . clearly disproves it authenticity." The court found that Whitaker presented no evidence to support this claim. The trial court found that all of Whitaker's other arguments go to the weight, not the authenticity, of the default letter and denied Whitaker's motion to strike the default letter.

{¶12} Whitaker contends that the trial court abused its discretion in not striking the default letter. First, he contends that there are genuine issues of material fact concerning whether the default letter is relevant to this foreclosure action because: (1) the settlement

agreement and dismissal of the 2018 foreclosure makes the October 19, 2015 default letter inapplicable; (2) Whitaker claims he never received the default letter so it was not "deemed" delivered; and (3) PNC Bank could not rely on the October 19, 2015 default letter, but had to send a second, new default letter.

{¶13} We find that these arguments go to the weight or evidentiary value of the letter, not whether it was properly authenticated under Civ.R. 56(E). Authentication, as a condition precedent to the admissibility of evidence, is a showing that the matter in question is what it purports to be. *State v. Entingh,* 2023-Ohio-2799, ¶ 27 (2nd Dist.). "The authentication threshold is low, meaning that the party seeking to introduce the disputed evidence need only demonstrate 'a reasonable likelihood that the evidence is authentic.' " *State v. Shropshire*, 2020-Ohio-6853, ¶ 11 (2d Dist.), quoting *State v. Yuschak*, 2016-Ohio-8507, ¶ 16 (9th Dist.). Whitaker's first three arguments about the default letter do not challenge whether it is what it purports to be but rather contends that the letter should be given little weight. This is outside of the scope of his motion to strike.

{¶14} Whitaker also contends that Hardrick failed to properly authenticate the default letter because Hardrick testified that "a true and accurate copy of the Default Letter is attached as Exhibit 4," but Whitaker argues Hardrick was required to state specifically that he "was able to compare the copy with the original and verify the copy is accurate." Whitaker did not raise this argument in the trial court in his motion to strike and has waived it. " 'A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below.' " *RHDK Oil & Gas, LLC v. Willowbrook Coal Co.*, 2021-Ohio-1362, ¶ 51 (5th Dist.), quoting *State v. Wintermeyer,* 2019-Ohio-

5156, ¶ 10. It is well established that party who fails to raise an argument in the trial court waives the right to raise it on appeal. *Id.* at ¶ 52.

**{¶15}** The trial court did not abuse its discretion when it denied Whitaker's motion to strike the letter after it determined that Hardrick's affidavit properly authenticated the default letter. Civ.R. 56(E) governs the form of affidavits and provides, in relevant part, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit." Hardrick's affidavit comports with the requirements of Civ.R. 56(E). Whitaker's first assignment of error is overruled.

### B. The Trial Court's Grant of Summary Judgment

### 1. Standard of Review

**{¶16}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). As such, this Court reviews a trial court's award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996); *Austin v. Mid-Ohio Pipeline Services, LLC*, 2023-Ohio-1958, ¶ 28 (5th Dist.).

**{¶17}** Civ. R. 56(C) states in pertinent part:

> Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . . A summary judgment shall not be rendered unless it appears from such

evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

Thus, summary judgment may be granted only after the trial court determines that: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶18} The party seeking summary judgment bears the burden of demonstrating no issues of material fact exist for trial. *Austin,* 2023-Ohio-1958 at ¶ 29, citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 (1986). The standard for granting summary judgment is:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56© which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt,* 75 Ohio St.3d 280, 293 (1996). The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150 (1974); *Austin* at ¶ 29.

### 2. Analysis of PNC Bank's Foreclosure Claim

**{¶19}** To support a motion for summary judgment on its foreclosure action, PNC Bank must show: (1) it is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if it is not the original mortgagee, the chain of assignments and transfers; (3) all conditions precedent have been met; (4) the mortgagor, Whitaker, is in default; and (5) the amount of principal and interest due. *Wachovia Bank of Delaware, N.A. v. Jackson*, 2011-Ohio-3203, ¶ 40-45 (5th Dist.).

**{¶20}** Whitaker contends that the trial court erred in finding summary judgment on PNC Bank's foreclosure claim because PNC Bank did not present sufficient evidence that (1) all conditions precedent have been met, (2) he was in default; and (3) the amount of principal and interest due. Whitaker contends that because the default letter was improperly admitted into evidence as argued in his first assignment of error, PNC Bank failed to present sufficient evidence that all conditions precedent have been met and that he was in default. However, because we rejected this argument, overruled his first assignment of error, and found that the trial court properly considered the default letter, this argument must also fail.

**{¶21}** Whitaker also argues that PNC Bank has failed to show the principal and interest due in this case. In support of this, he argues that PNC Bank seeks a lower principal amount in this foreclosure action than it did in an earlier foreclosure action that was previously dismissed, and these differences create a genuine issue of material fact.

**{¶22}** PNC Bank established the principal and interest due in this case with the affidavit testimony of Hardrick. Whitaker provided his own affidavit and that of his attorney, Davidson, in which both testified about the sums allegedly owed in a prior dismissed foreclosure action and the payments Whitaker made as part of the trial modification that was part of the unfinalized 2018 settlement. Whitaker and Davidson both also testified that the 2018 settlement was never finalized, and that PNC Bank sent a refund check. However, neither Whitaker nor his attorney identified an error in the sum set forth in Hardrick's affidavit concerning the principal and interest due, nor did they present an accounting for a different sum than that established by Hardrick.

**{¶23}** Our de novo review of the affidavit testimony presented by the parties concerning the amount of principal and interest due comports with the trial court's assessment of it. The trial court found that the Hardrick affidavit established the principal and interest due and that "Whitaker responds to PNC's Motion by discussing the previous attempt by PNC to foreclose" but Whitaker does not "call into contention the factual basis of PNC's current motion." The trial court found "Whitaker speculates about differences in the amount owed as alleged in the first foreclosure proceeding and the amount owed in the current proceeding – but offers no evidence to dispute the amount Hardrick avers is now owed." Thus, the trial court did not err in entering summary judgment on PNC Bank's foreclosure claim.

3. Analysis of Whitaker's Counterclaims

**{¶24}** The trial court granted PNC Bank summary judgment on all four of Whitaker's counterclaims. Whitaker challenges the trial court's decision on three of the four counterclaims: (1) breach of contract based on the 2018 settlement agreement; (2)

breach of the covenant of good faith and fair dealing; and (3) alleged violations of the Real Estate Settlement Procedures Act ("RESPA").

### a. Breach of Contract

**{¶25}** To state a valid claim for breach of contract, Whitaker must establish: (1) the existence of a contract; (2) performance by Whitaker; (3) breach by PNC Bank; and (4) damage as a result. *McFarren v. Emeritus at Canton*, 2018-Ohio-1593, ¶ 34 (5th Dist.). Whitaker alleged the PNC Bank breached the settlement agreement by failing to mail documents to him at the correct address and by including legal fees and costs in the total loan amount owed by him.

**{¶26}** PNC Bank argued that it was entitled to summary judgment on Whitaker's breach of contract claim because the settlement agreement stated that PNC Bank would give Whitaker the opportunity to enter into a trial modification and that Whitaker would have to comply with the loan modification agreements, including executing a permanent modification agreement. PNC Bank contended that it was undisputed that Whitaker never signed the permanent modification agreement. And, even after Whitaker failed to sign the permanent modification agreement, PNC Bank presented Whitaker a second modification agreement with more favorable terms, and again Whitaker failed to execute it. Therefore, PNC Bank argued that Whitaker could not succeed on his breach of contract claim as a matter of law. PNC Bank supported its argument with Hardrick's affidavit.

**{¶27}** Whitaker conceded that he failed to execute the permanent modification agreement by the November 2018 deadline, but argued that the reason he did not sign it was because PNC Bank mailed it to the wrong address and he did not receive it in time to execute it by the deadline, and the total new loan amount owed by Whitaker included

attorney fees and costs in violation of the terms of the 2018 settlement agreement. However, the mailing address issue is a red herring. PNC Bank resent the permanent modification agreement upon learning that Whitaker was no longer using the P.O. Box they had on file for him. Thus, even if we assume for the sake of argument that this was a breach, it was an immaterial breach as it was cured by PNC Bank immediately upon learning of the correct address and it gave Whitaker additional time to execute the document. "Merely nominal, trifling, or technical departures are not sufficient to breach the contract." *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.*, 2008-Ohio-148, ¶ 24 (10th Dist.).

**{¶28}** Davidson testified that Whitaker received the second mailing in late December but nevertheless refused to execute it within the 14-day period because Whitaker believed the total new loan amount owed by him as calculated by PNC Bank included $2,656.00 in legal fees and costs associated with the foreclosure action in violation of sections 3 and 4 of the 2018 settlement agreement. However, Whitaker's belief that the total new loan amount included legal fees and costs from the foreclosure action was speculation. PNC Bank refuted the speculation with an accounting and worksheet attached to the permanent modification that mathematically showed that the total new loan amount owed by Whitaker did not include the $2,656.00 in legal fees and costs because the new loan amount was *over $4,200 less* than the amount that would be owed if the legal fees and costs were included. Other than his speculative statements, Whitaker failed to show that these legal fees and costs were included in the new loan amount owed by him or to otherwise refute PNC Bank's evidence.

**{¶29}** Thus, there is no genuine issue of material fact about the 2018 settlement agreement. The permanent loan modification was never executed by Whitaker due to his incorrect belief it included legal fees and costs. Therefore, Whitaker could not maintain a breach of contract action because he failed to execute the permanent loan modification. The trial court properly determined that PNC Bank's mailing did not constitute a material breach, and that Whitaker failed to dispute PNC Bank's evidence that the new loan amount owed by him did not include legal fees and costs. Thus, the trial court did not err when it granted summary judgment to PNC Bank on Whitaker's breach of contract counterclaim.

b. Breach of the Covenant of Good Faith and Fair Dealing

**{¶30}** Whitaker's second counterclaim was for breach of the covenant of good faith and fair dealing. The trial court found that because Whitaker's breach of contract claim failed, his breach of the covenant of good faith and fair dealing must also fail, citing *Lucarell v. Nationwide Mut. Inc. Co*, 2018-Ohio-15, ¶ 44 ("there is no independent cause of action for breach of the implied duty of good faith and fair dealing apart from a breach of the underlying contract"). Whitaker appears to concede that this is the correct statement of law, citing *Maher v. City of Akron*, 2018-Ohio-4310, ¶ 19 (9th Dist.) ("Allegations of a breach of duty of good faith and fair dealing are subsumed into a breach of contract claim."). However, he argues that because the trial court erred in finding for PNC Bank on his breach of contract claim, it also erred in ruling on his breach of good faith and fair dealing claim. Because we found that the trial court did not err in its ruling on Whitaker's breach of contract claim, we find that his claim for breach of the duty of

good faith and fair dealing must also fail. The trial court did not err in granting summary judgment to PNC Bank on this claim.

### c. RESPA Claim

**{¶31}** Last, Whitaker brought a claim against PNC Bank asserting that it violated RESPA, a statute enacted by Congress in 1974 to protect home buyers from inflated prices in the home purchasing process by ensuring that consumers are provided with greater and more timely information on the nature and costs of the settlement process. *See generally* 12 U.S.C. 2601, et seq. Whitaker alleged that he made a "qualified written request" ("QWR") in February 2019 and that PNC Bank did not acknowledge the QWR within five days as required by statute. Whitaker also alleges PNC Bank did not investigate or make any appropriate corrections within the 30-day period in the statute. PNC Bank denied that it failed to comply with any statutory obligations and argued that it was entitled to summary judgment on the RESPA claim because Whitaker did not allege and could not show actual damages. PNC Bank contended that because there was no proof of any actual damages, the RESPA claim failed.

**{¶32}** Whitaker opposed summary judgment on this claim but did not provide evidence of any actual damages. Instead, he repeated his allegations that he mailed a QWR, in which he refuted the refund check PNC Bank sent when the 2018 settlement agreement collapsed, objected to being mailed a permanent loan modification agreement, and disputed the legal fees and costs that he believed were incorrectly included in the total new loan amount owed. However, Whitaker does not identify any actual damages he suffered, and as we previously addressed, he only speculated that legal fees and costs were incorrectly included in the calculation of the total new loan amount. PNC Bank

presented irrefutable evidence that these legal fees and costs were not included. The trial court granted PNC Bank summary judgment on the ground that Whitaker did not show evidence of any actual damages resulting from PNC Bank's failure to respond to the QWR.

**{¶33}** Whitaker argues that the trial court erred because "it completely overlooked the statutory damages (up to $2,000)" he argued he was entitled to receive. However, the statute does not provide for $2,000 in statutory damages. Instead, it provides for up to $2,000 in damages if a trial court finds the lender *engaged in a pattern or practice of noncompliance*: "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C.A. 2605 (f)(1)(B), governing damages. Whitaker alleged only a one-time violation of RESPA. Whitaker made no allegation and presented no evidence that PNC Bank engaged in a pattern or practice of violating RESPA. Thus, the $2,000 statutory damage provision has no application here.

**{¶34}** We find that Whitaker's RESPA claim fails because he failed to present any evidence of damages resulting from the alleged RESPA violation. " 'Courts have determined that actual damages must be pled as part of any RESPA claim and any alleged loss must be related to the alleged RESPA violation itself.' " *HSBC Bank USA, Natl. Tr. Co. v. Teagarden,* 2013-Ohio-5816, ¶ 68 (11th Dist.), quoting *Mattison v. PNC Bank, N.A.,* S.D.Ohio No. 3:13–cv–061, 2013 WL 3936373, *9 (July 30, 2013). "If there is no proof to be had of any such damages, a RESPA claim fails." *Marais v. Chase Home Fin., LLC*, 24 F.Supp.3d 712 (S.D.Ohio 2014). The trial court properly entered summary judgment on the RESPA claim.

**{¶35}** We overrule Whitaker's second assignment of error.

## IV. CONCLUSION

**{¶36}** For the foregoing reasons, we overrule appellant's assignments of error and affirm the decision of the Fairfield County Court of Common Pleas.

JUDGMENT AFFIRMED.

By: Hess, J.
Baldwin, P.J.
Smith, J. concur