[Cite as *Deutsche Bank Natl. Trust Co. v. Pinkston*, 2025-Ohio-3178.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST CO., AS TRUSTEE IN TRUST FOR REGISTERED HOLDERS OF LONG BEACH MORTGAGE LOAN TRUST 2005-1, ASSET-BACKED CERTIFICATES, SERIES 2005-1,<br><br>    Plaintiff - Appellee<br><br>-vs-<br><br>MARILYN PINKSTON, et al.,<br><br>    Defendants - Appellees.<br><br>      (EARL L.  JEFFERSON,<br><br>      Defendant-Appellant) | Case No. 2025CA0030<br><br>Opinion & Judgment Entry<br><br>Appeal from the Court of Common Pleas of Richland County, Case No. 2024-CV-0031 N<br><br>Judgment:   Affirmed<br><br>Date of Judgment: September 5, 2025 |

BEFORE: Andrew J. King, Robert G. Montgomery, and David M. Gormley, Judges

APPEARANCES:  Earl L. Jefferson briefed the case on his own behalf as Defendant-Appellant.

*Gormley, J.*

    **{¶1}**   Appellant Earl L. Jefferson challenges an order granting summary judgment in favor of plaintiff Deutsche Bank National Trust Company in this foreclosure case.  For the reasons that follow, we affirm the trial court's judgment.

**The Key Facts**

    **{¶2}**   Deutsche Bank's action for foreclosure centers on a promissory note and mortgage signed by James H. Pinkston in 2004.  Mr. Pinkston was the sole record owner of real property located at 859 Dickson Parkway in Mansfield, Ohio when he signed the

$114,000 note.  In the mortgage that was executed the same day, Mr. Pinkston is listed as "a divorced man," although evidence in the record indicates that he was married at the time to Marilyn Pinkston.  The lender on both the note and the mortgage was Long Beach Mortgage Company, and the mortgage was later assigned to Deutsche Bank.

{¶3}	Deutsche Bank filed a complaint for in-rem foreclosure in 2024 alleging that the note was in default and that an unpaid balance of $85,841.52 was owed, plus interest and other fees and costs.  According to the bank's complaint, James Pinkston is now deceased.  Marilyn Pinkston was initially named as a defendant in the case, but Deutsche Bank later amended the complaint to remove Mariilyn's name because she too is now deceased.  Added as a defendant in the bank's amended complaint was Earl L. Jefferson and his unknown spouse, if any.  Jefferson (who is the son of Mrs. Pinkston and the stepson of Mr. Pinkston) inherited the Dickson Parkway property when Mrs. Pinkston passed away.  Once service of the amended complaint was perfected, Deutsche Bank sought summary judgment.

{¶4}	Jefferson disputed Deutsche Bank's interest in the property and claimed that Mrs. Pinkston had not signed the mortgage and had been unaware that Mr. Pinkston had encumbered the property.  Though Jefferson argued that Mr. and Mrs. Pinkston had been joint tenants with rights of survivorship and that any debt had been extinguished when Mr. Pinkston died, the trial court found otherwise and granted summary judgment in favor of Deutsche Bank.  Jefferson now appeals, raising five assignments of error.

**Jefferson's Brief Includes Both Too Little and Too Much**

{¶5}	We first note that Jefferson's brief fails to comply in two key ways with the Ohio Rules of Appellate Procedure.  First, Jefferson in his appellate brief refers several

times to certain documents, but he does not indicate where those documents can be found in the record. His use of vague directives such as "see probate documents" and "see estate document" does not comport with App.R. 16(D), which says that "[r]eferences in the briefs to parts of the record shall be to the pages of the parts of the record involved."

{¶6} As Ohio appellate courts have repeatedly noted, we are not duty-bound to go thumbing through the record in search of evidence that supports a party's argument. *See Hall v. Crawford Cty. Job & Family Servs.*, 2022-Ohio-1358, ¶ 38 (3d Dist.), quoting *State v. McGuire*, 1996 WL 174609, *14 (12th Dist. Apr. 15, 1996) ("'It is not the duty of an appellate court to search the record for evidence to support an appellant's argument'"); *State ex rel. Physicians Commt. For Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 2006-Ohio-903, ¶ 13 ("Appellate attorneys should not expect the court to peruse the record without the help of pinpoint citations to the record") (quotations omitted).

{¶7} Jefferson's argument is further complicated by the fact that he has improperly attached documents to his brief that do not appear to be part of the trial court's record. App.R. 9(A)(1) provides that the record on appeal consists of "[t]he original papers and exhibits . . . filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court." Because the documents attached to Jefferson's brief "are not properly part of the appellate record," they cannot be considered by this court. *State v. Brown*, 2017-Ohio-8997, ¶ 10 (5th Dist.), citing *Willis v. Ohio Dept. of Transp.*, 2016-Ohio-1593, ¶ 9, fn. 1 (4th Dist.). "[A] reviewing court cannot add matter to the record before it that was

not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Hooks*, 92 Ohio St.3d 83, 83 (2001).

**{¶8}** Jefferson's pro se status cannot excuse his failure to follow the Ohio Rules of Appellate Procedure. The Supreme Court of Ohio has "repeatedly declared that 'pro se litigants . . . must follow the same procedures as litigants represented by counsel.'" *State ex rel. Neil v. French*, 2018-Ohio-2692, ¶ 10, quoting *State ex rel. Gessner v. Vore*, 2009-Ohio-4150, ¶ 5. Non-attorney litigants who choose to represent themselves in court are also "'presumed to have knowledge of the law and legal procedures and . . . are held to the same standard as litigants who are represented by counsel.'" *State ex rel. Fuller v. Mengel*, 2003-Ohio-6448, ¶ 10, quoting *Sabouri v. Ohio Dept. of Job & Family Serv.*, 145 Ohio App.3d 651, 654 (10th Dist. 2001).

## The Trial Court Properly Granted Summary Judgment

**{¶9}** Appellate courts review with fresh eyes a trial court's decision on a motion for summary judgment. *Smathers v. Glass*, 2022-Ohio-4595, ¶ 30 ("an appellate court applies a de novo standard of review" when a summary-judgment decision is challenged). In reviewing the trial court's judgment in this case, we must conduct "an independent review of the evidence without deference to the trial court's findings." *Id*. In doing so, we examine the evidence available in the record and determine whether summary judgment is appropriate. *Id*.

**{¶10}** Under Civ.R. 56(C), summary judgment may be granted only after the trial court determines that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and — viewing the

evidence most strongly in favor of the party against whom the motion for summary judgment is made — that conclusion is adverse to that party. *PNC Bank Natl. Assn. v. Whitaker*, 2025-Ohio-1078, ¶ 17, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The party seeking summary judgment bears the initial burden of demonstrating that no issues of material fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). The moving party must be able to point to some evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support its claims. *Id*. at 292–293. If the moving party satisfies its initial burden, the nonmoving party then has the reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. *Id*. at 293. The record on summary judgment must be viewed in the light most favorable to the nonmoving party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 152 (1974).

{¶11} To succeed on a motion for summary judgment in an action for foreclosure, a bank must show that: "(1) it is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if it is not the original mortgagee, the chain of assignments and transfers; (3) all conditions precedent have been met; (4) the mortgagor . . . is in default; and (5) the amount of principal and interest due." *Whitaker* at ¶ 19, citing *Wachovia Bank of Delaware, N.A. v. Jackson*, 2011-Ohio-3203, ¶ 40–45 (5th Dist.).

{¶12} "[A] plaintiff in a foreclosure action must have standing at the time the complaint is filed in order to invoke the jurisdiction of the common pleas court." *Deutsche Bank Natl. Trust Co. v. Holden*, 2016-Ohio-4603, ¶ 29, citing *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 2012-Ohio-5017, ¶ 24. The record in this case contains undisputed evidence that Deutsche Bank is the assignee of the mortgage and holder of the note.

**{¶13}** Jefferson does not dispute Deutsche Bank's compliance with the conditions precedent to foreclosure. Deutsche Bank provided to the trial court an affidavit from an officer of the company that manages the bank's loan portfolio, and that officer indicates in the affidavit not only that Deutsche Bank has possession of the note but also that the account history shows that the note was in default as of March 1, 2020. (Pl.'s. Mot. Summ. J., Ex. A, Benavidez Aff. ¶ 4-5.).

*The Foreclosure Action Is Not Barred by any Statute of Limitations*

**{¶14}** Jefferson argues here that this foreclosure action is barred by the statute of limitations. All parties agree that the note was signed in 2004, and Deutsche Bank filed this foreclosure action in 2024. Citing R.C. 2305.06, Jefferson argues that Deutsche Bank waited too long to file this case. That statutory provision says that an action based on an agreement or contract in writing must be brought within six years after the cause of action accrued, though the version of the statute in effect when Mr. Pinkston signed the note and mortgage provided a 15-year limitations period for bringing an action on written agreements.

**{¶15}** Ohio courts have not always agreed about the proper limitations period that applies to in-rem cases like this one. *See Trinity Finan. Services LLC v. D'Apolito*, 2024-Ohio-825, ¶ 41 (7th Dist.) ("the action on the mortgage was subject to the . . . statute of limitations in R.C. 2305.06(A) rather than the . . . statute of limitations applicable to U.C.C. notes in R.C. 1303.16(A)"); *U.S. Bank Natl. Assn. v. O'Malley*, 2019-Ohio-5340, ¶ 22 (8th Dist.) ("If a mortgagee is unable to enforce a promissory note due to the running of the statute of limitations, the mortgagee still has the right to enforce an action on the mortgage under the longer [21-year] statute of limitations period set forth in R.C. 2305.04"); *In re*

*Fisher*, 584 B.R. 185, 200 (Bankr.N.D.Ohio 2018) (noting that the Supreme Court of Ohio "has not specifically ruled on the applicable statute of limitations for *in rem* foreclosure actions upon a mortgage" and holding that a bank was "barred by the six-year statute of limitations in O.R.C. § 1303.16(A) from foreclosing" on a mortgage).

**{¶16}** Even if Jefferson is correct that R.C. 2305.06 sets the limitations period that governs in this case, he is surely mistaken in his view that the limitations period began to run in 2004 when Mr. Pinkston signed the note and mortgage. That is so because in foreclosure cases, as in other breach-of-contract cases, "the cause of action does not accrue on the date the contract came into existence" but instead accrues "when one party breaches the contract." *Huntington Natl. Bank v. Michel*, 2017-Ohio-9404, ¶ 33 (7th Dist.), citing *State ex rel. Teamsters Local Union 377 v. City of Youngstown*, 50 Ohio St.2d 200, 203–204 (1977) ("Normally, a cause of action does not accrue until such time as the infringement of a right arises. It is at this point that the time within which a cause of action is to be commenced begins to run.").

**{¶17}** Deutsche Bank asserted in its complaint that Mr. Pinkston defaulted on the note when he failed to make the payment that was due on March 1, 2020. Deutsche Bank provided affidavit testimony to support this assertion. Whether that date in 2020 triggered the running of the statute of limitations for a foreclosure action or perhaps a later date when the bank may have demanded full repayment of any outstanding loan balance under an acceleration clause in the loan agreement, surely Deutsche Bank's filing of its foreclosure action in 2024 was timely under R.C. 2305.06 or any other relevant limitations period.

*<u>An Error in the Trial Court's Judgment Entry Regarding Jefferson's Relationship to the Debtor Does Not Affect the Judgment's Validity</u>*

**{¶18}** The trial court's judgment entry granting a final judgment and decree of foreclosure erroneously describes Jefferson as "the only surviving heir of James H. Pinkston." (Entry Granting Final Judgment, 2.) Jefferson was not in fact an heir of Mr. Pinkston. Instead, Jefferson inherited the property from his mother, who was married to Mr. Pinkston. Jefferson contends that the trial court granted summary judgment in part on the mistaken belief that Jefferson was the sole heir of the debtor.

**{¶19}** That erroneous language in the entry is irrelevant. Deutsche Bank sought a foreclosure in rem, meaning that the action was against the property itself, and not against the persons named in the complaint. *Moss v. Standard Drug Co.*, 159 Ohio St. 464, 470 (1953) ("Actions in rem are usually defined as proceedings against property itself, or as is said, directed primarily against things themselves").

**{¶20}** Jefferson is listed in the amended complaint as a party who may claim an interest in the property, but the bank did seek judgment against Jefferson himself for the amount owed on the note, and the trial court's judgment entry granting the motion for summary judgment did not find Jefferson liable for the balance due on the note. Instead, the trial court's entry rightly states that "this case is not an action in which a personal judgment may be taken against Defendant Earl Jefferson for payment of the obligation on the [n]ote." (Entry Granting Pl.'s Mot. Summ. J., 5.)

**{¶21}** Even though the entry granting a final judgment and decree of foreclosure incorrectly referred to Jefferson as the only surviving heir of Mr. Pinkston, nothing about that phrase undercuts the validity of the judgment itself. The trial court correctly granted an in-rem judgment only.

*Unauthorized Filings by Plaintiff's Former Counsel Are Not Grounds for Dismissal*

**{¶22}** While this case was pending before the trial court, Deutsche Bank changed its legal representation from one law firm to a different one. New counsel (from the firm of Eckert Seamans Cherin & Mellott, LLC) filed the motion for summary judgment. After the trial court granted judgment, Deutsche Bank's prior counsel (from the firm of Reisenfeld & Associates LLC) inexplicably asked the trial court to sign an order of sale of the property and other related documents. These unauthorized filings were stricken by the trial court at Deutsche Bank's request.

**{¶23}** Jefferson argues that these unauthorized filings present disputed questions of fact that defeat summary judgment. In support of his argument, Jefferson cites disciplinary cases involving the unauthorized practice of law, and he asks us to overturn the judgment as a sanction for the unauthorized actions of the bank's former counsel.

**{¶24}** Jefferson fails to explain how the post-judgment actions of Deutsche Bank's prior counsel affected the trial court's ruling on the motion for summary judgment. Only after the trial court had granted the motion for summary judgment did the bank's former counsel reappear in the case with some post-judgment filings. Because all the unauthorized filings were stricken from the record, any alleged harm that Jefferson might claim was cured. We see no reason why these post-judgment filings would cast any doubt on the validity of the trial court's judgment.

*James Pinkston's Misrepresentation About His Marital Status Does Not Bar Judgment in Deutsche Bank's Favor*

**{¶25}** The mortgage document signed by Mr. Pinkston in 2004 describes him as a divorced man. His wife, Marilyn Pinkston, was not listed on that mortgage or on the note.

**{¶26}** The mortgage's improper description of Mr. Pinkston's marital status is evidence, Jefferson claims, of fraud, and that fraud, in Jefferson's view, now bars any judgment in Deutsche Bank's favor. Any fraud, however, appears to have been committed by Mr. Pinkston rather than by the bank or by its predecessor in interest. Although Jefferson alleges that the bank that made the loan to Mr. Pinkston may have intentionally or negligently failed to fully investigate Mr. Pinkston's claim that he was a divorced man, Jefferson has not provided any evidence that creates a genuine issue of material fact for trial. At the summary-judgment stage, a party must set forth specific facts showing that there is a genuine issue for trial and cannot simply rely on unsupported assertions. Because Jefferson failed to meet his evidentiary burden under Civ.R. 56(E), the trial court did not err when it disregarded Jefferson's fraud allegation at the summary-judgment stage.

### *James and Marilyn Pinkston Were Not Joint Tenants with Rights of Survivorship*

**{¶27}** Jefferson claims that Marilyn and James Pinkston purchased the property in 2001 as joint tenants with a right of survivorship. There is no document in the record, however, that supports that claim. What the record does show is that the property was conveyed solely to Mr. Pinkston through a warranty deed dated November 30, 2001. Jefferson has not identified any evidence supporting his claim that the deed was later changed to create a joint tenancy.

**{¶28}** The documentation that Jefferson did provide shows that James and Marilyn Pinkston signed a mortgage on the property for $95,402 with Wells Fargo Home Mortgage on November 30, 2001. Three years later, Mr. Pinkston executed the note and mortgage at issue in this case, and soon thereafter, Wells Fargo signed and recorded

paperwork indicating that its mortgage on the property had been satisfied and was discharged. All other documentation regarding the property is dated after Mr. Pinkston died in 2022.

{¶29} Tenancies in common and survivorship tenancies are now addressed by statutes in Ohio. Because Mr. Pinkston acquired the property in question after those statutes were already in effect, they govern in this case. R.C. 5302.20(A) provides that "if any interest in real property is conveyed or devised to two or more persons for their joint lives and then to the survivor or survivors of them, those persons hold title as survivorship tenants, and the joint interest created is a survivorship tenancy."

{¶30} Jefferson argues that upon Mr. Pinkston's death, the mortgage now held by Deutsche Bank was extinguished. In the trial court, Jefferson relied upon a First District Court of Appeals case holding that a survivorship tenant cannot deed away more of an interest than he possessed and that conveyances of title from the survivorship tenant to a third party are conditioned on that tenant outliving all other survivorship tenants. *Murphy v. Murphy*, 77 Ohio App.3d 573, 576 (1st Dist. 1991). But as the court in *Murphy* held, "the case law makes clear that the right of survivorship in Ohio arises from the contractual language of the granting instrument, not as an incident of a joint tenancy as it existed at common law." *Id.* There is no evidence in the record that a joint tenancy relationship was ever created between James Pinkston and Marilyn Pinkston.

{¶31} Moreover, a mortgage does not convey title. "In Ohio, a mortgage is merely a security for a debt, and the legal and equitable title to the property remains in the mortgagor until the mortgage is foreclosed and a sale consummated, or until a mortgagee otherwise extinguishes the right of the mortgagor to redeem." *Fannie Mae v. Winding*,

2014-Ohio-1698, ¶ 21 (12th Dist.), citing *Stand Energy Corp. v. Epler*, 2005-Ohio-4820, ¶ 13 (10th Dist.). Upon Mr. Pinkston's death, Mrs. Pinkston inherited the property and acquired full title to it, but this did not extinguish Deutsche Bank's mortgage. Instead, the mortgage followed the property, and Mrs. Pinkston took the property subject to the mortgage. *See id*. at ¶ 23. Deutsche Bank's mortgage on the property was not extinguished when Mr. Pinkston died.

{¶32} For these various reasons, the judgment of the Richland County Court of Common Pleas is affirmed. Costs are to be paid by Appellant Earl L. Jefferson.

By: Gormley, J.;

King, P.J. and

Montgomery, J. concur.